**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>EXPRESS SCRIPTS, INC., *et al.*<br><br>    Defendants. | Case No. 4:24-cv-01043-MTS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS EXPRESS
SCRIPTS, INC. AND ACCREDO HEALTH GROUP, INC.'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

LEGAL STANDARD ......................................................................................................................4

ARGUMENT ...................................................................................................................................4

I.   AHF's Claims Are Barred By Res Judicata...........................................................................4

    A.   AHF's Claims Arise From The Same Facts And Conduct As Its
         Previously Dismissed Action And Seek The Same Remedies ...............................5

    B.   AHF's Claims Involve The Same Parties As Its Previously Dismissed
         Action, And Accredo Is In Privity With Express Scripts .......................................7

II.  The FAC Fails To State A Plausible Claim For Relief............................................................7

    A.   AHF Fails To Allege A Plausible Antitrust Claim ................................................7

         1.   AHF Fails To Allege Antitrust Injury............................................................8

         2.   AHF Does Not Allege Market Power Or A Dangerous Probability
              Of Achieving Market Power .......................................................................11

              a.   The Alleged Louisiana Specialty Pharmacy Market Is
                   Implausible........................................................................................12

              b.   Even If AHF's Market Definition Were Plausible, AHF
                   Has Not Alleged That Accredo Has Anything Close To
                   Market Power ....................................................................................14

    B.   AHF Fails To Allege A Plausible Contract Claim................................................17

         1.   Express Scripts Did Not Breach The Contract Because Express
              Scripts Complied With The Express Terms Of The Contract ...................17

         2.   Express Scripts Did Not Breach The Implied Covenant Of Good
              Faith And Fair Dealing Because It Complied With The Express
              Terms Of The Contract And AHF Got Its Bargained-for Benefit............19

    C.   AHF Fails To Allege A Plausible Louisiana Unfair Trade Practices Claim .........20

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AIDS Healthcare Found. v. Express Scripts, Inc.*,
  658 F. Supp. 3d 693 (E.D. Mo. 2023)..................................................... *passim*

*Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*,
  464 S.W.3d 177 (Mo. 2015) ....................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................2, 4, 20

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)...........................................................................1, 8, 11

*Bathke v. Casey's Gen. Stores, Inc.*,
  64 F.3d 340 (8th Cir. 1995) .......................................................................8

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)...................................................................................8

*C.H. Robinson Worldwide, Inc. v. Lobrano*,
  695 F.3d 758 (8th Cir. 2012) .....................................................................4

*Cent. Garden & Pet Co. v. Scotts Co.*,
  85 F.App'x 633 (9th Cir. 2004) .................................................................6

*Chesterfield Village, Inc. v. City of Chesterfield*,
  64 S.W.3d 315 (Mo. 2002) (en banc) ..........................................4, 5, 6, 7

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.*,
  808 F.3d 747 (8th Cir. 2015) ...................................................................19

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984).................................................................................12

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
  491 F.3d 380 (8th Cir. 2007) ...................................................................11

*Daredevil, Inc. v. ZTE Corp.*,
  1 F.4th 622 (8th Cir. 2021) ........................................................................7

*Dittmer Properties, L.P. v. F.D.I.C.*,
  708 F.3d 1011 (8th Cir. 2013) .................................................................17

*Epice Corp. v. Land Reutilization Auth. of City of St. Louis*,
  608 S.W.3d 725 (Mo. Ct. App. 2020).........................................................5

*In re EpiPen Direct Purchaser Litig.*,
  2022 WL 1017770 (D. Minn. Apr. 5, 2022)..............................................15

*F.T.C. v. Tenet Health Care Corp.*,
  186 F.3d 1045 (8th Cir. 1999) .................................................................12

*Fischer v. NWA, Inc.*,
  883 F.2d 594 (8th Cir. 1989) ................................................................................ 8

*Foam Supplies, Inc. v. The Dow Chem. Co.*,
  2007 WL 4210354 (E.D. Mo. Nov. 27, 2007) ...................................................... 16

*Hiland Dairy, Inc. v. Kroger Co.*,
  402 F.2d 968 (8th Cir. 1972) .............................................................................. 12

*Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*,
  962 F.3d 1015 (8th Cir. 2020) ............................................................................ 12

*J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.*,
  881 S.W.2d 638 (Mo. Ct. App. 1994) .................................................................. 18

*Kesler v. Curators of the Univ. of Mo.*,
  516 S.W.3d 884 (Mo. Ct. App. 2017) .................................................................... 6

*Kesterson v. State Farm Fire & Cas. Co.*,
  242 S.W.3d 712 (Mo. 2008) ............................................................................. 4, 6

*Little Rock Cardiology Clinic PA v. Baptist Health*,
  591 F.3d 591 (8th Cir. 2009) .............................................................................. 13

*Lucero v. Curators of Univ. of Missouri*,
  400 S.W.3d 1 (Mo. Ct. App. 2013) ...................................................................... 17

*Mahaska Bottling Co. v. PepsiCo Inc.*,
  271 F. Supp. 3d 1054 (S.D. Iowa 2017) ...................................................... 9, 10, 15

*McWane, Inc. v. FTC*,
  783 F.3d 814 (11th Cir. 2015) ............................................................................ 15

*Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*,
  789 F. Supp. 2d 1133 (D. Minn. 2011) ................................................................ 14

*Morgenstern v. Wilson*,
  29 F.3d 1291 (8th Cir. 1994) .............................................................................. 16

*Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*,
  468 U.S. 85 (1984) ......................................................................................... 7, 8

*Niemann v. Carlsen*,
  2023 WL 4198227 (E.D. Mo. June 27, 2023) ................................................ 8, 15, 17

*Norman Tobacco & Cando Co. v. Gillette Safety Razor Co.*,
  295 F.2d 362 (5th Cir. 1961) ................................................................................ 7

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) .......................................................................................... 11

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438 (2009) ...................................................................................... 9, 10

*Palmore v. City of Pac.*,
  393 S.W.3d 657 (Mo. Ct. App. 2013) .................................................................... 7

*Par v. Wolfe Clinic, P.C.*,
  70 F.4th 441 (8th Cir. 2023) .......................................................................................8

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
  911 F.3d 505 (8th Cir. 2018) ...............................................................................13, 19

*Physician Specialty Pharmacy, LLC v. Prime Therapeutics, LLC*,
  2019 WL 1239705, at *6-8 (D. Minn. Jan. 24, 2019), *report and
  recommendation adopted*, 2019 WL 1399571 (D. Minn. Mar. 28, 2019)...............11, 13, 14

*Process Controls Int'l, Inc. v. Emerson Process Mgmt.*,
  753 F. Supp. 2d 912 (E.D. Mo. 2010).......................................................14, 15, 17

*Re/Max Int'l., Inc. v. Realty One, Inc.*,
  173 F.3d 995 (6th Cir. 1999) ....................................................................................14

*Reliance Bank v. Paramont Properties, LLC*,
  425 S.W.3d 202 (Mo. Ct. App. 2014).......................................................................20

*Ryko Mfg. Co. v. Eden Servs.*,
  823 F.2d 1215 (8th Cir. 1987) ..................................................................................12

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
  2008 WL 199567 (E.D. Mo. Jan. 22, 2008) .............................................................16

*Siebert v. Peoples Bank*,
  632 S.W.3d 461 (Mo. Ct. App. 2021).................................................................19, 20

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993)..................................................................................................12

*Suppes v. Curators of Univ. of Mo.*,
  613 S.W.3d 836 (Mo. Ct. App. 2020)......................................................................5, 6

*TheMLSonline.com, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*,
  840 F. Supp. 2d 1174 (D. Minn. 2012) ......................................................................8

*Trone Health Servs., Inc. v. Express Scripts Holding Co.*,
  2019 WL 1207866, at *5-6 (E.D. Mo. Mar. 14, 2019), *aff'd*, 974 F.3d 845 (8th
  Cir. 2020).................................................................................................................11

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)..................................................................................................12

*Wholesale All., LLC v. Express Scripts, Inc.*,
  366 F. Supp. 3d 1069 (E.D. Mo. 2019)....................................................................10

## Other Authorities

Fed. R. Civ. P. 12(b)(6)......................................................................................................4

R.S. 22:1860.3(A) ...........................................................................................................20

Restatement (Second) of Judgments § 59 cmt. .................................................................7

## INTRODUCTION

Plaintiff AIDS Healthcare Foundation's ("AHF") First Amended Complaint, like its initial complaint, suffers from the same fatal flaw: it is barred entirely by the doctrine of res judicata. Specifically, AHF complains that Defendant Express Scripts, Inc., used its bargaining leverage as a large Pharmacy Benefits Manager ("PBM") to "impose" "low reimbursement rates," performance-based reimbursement metrics, and other "arbitrary" contract terms on AHF. ECF No. 29 ("FAC") ¶¶ 28–29, 31–32, 40–41. But this Court dismissed, with prejudice, claims arising from these same grievances on a motion to dismiss in 2023. *AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 700 (E.D. Mo. 2023) (dismissing claims based on allegations that "[a]ccording to AHF, because of Express Scripts' considerable bargaining leverage as one of the nation's largest PBMs, Express Scripts was able to impose . . . lower pharmacy reimbursement rates [and] . . . . performance metrics [that] are arbitrary"). So too, AHF's breach of contract and implied covenant of good faith and fair dealing claims, which, like those in the prior action, are all based upon, and arise under, the same contract: the parties' 2017 Pharmacy Provider Agreement. *See AIDS Healthcare Found.*, 658 F. Supp. 3d at, 703–04; FAC ¶¶ 7, 66, 68–69. Because AHF's claims in this case arise from the same operative facts as its prior, unsuccessful case, AHF's claims are now precluded by the straightforward principles of res judicata.

AHF also again fails to state a plausible claim for relief.

***First***, AHF fails to allege plausible antitrust claims. As a threshold matter, AHF has not pled a cognizable antitrust injury. Indeed, while AHF's alleged "injury" is that it cannot charge higher prices for prescription drugs, the law is clear that a firm "claiming that it [is] unable to raise prices" has not suffered "*antitrust* injury." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) ("*ARCO*"). AHF's alleged relevant market, the Louisiana specialty pharmacy market, is also not plausible; and, even if it were, AHF has failed to allege that either Express Scripts or

Accredo has come anywhere close to monopolizing such a market. To the contrary, AHF alleges that 76% of specialty pharmacies nationwide are operated by someone other than Express Scripts or Accredo. *See* FAC ¶ 10 (alleging Accredo's share is 24%). What is more, AHF is completely silent as to the specific alleged market share for Accredo in the putative **Louisiana** specialty pharmacy market. As a matter of law, a firm with only a 24% market share, or unspecified market share, does not have the market power needed for AHF to succeed on either of its antitrust claims.

*Second*, AHF fails to allege a plausible contract claim. AHF claims that Express Scripts breached its contract and the implied covenant of good faith and fair dealing by treating Prime Therapeutics ("Prime") as a "Sponsor" under the parties' 2017 Pharmacy Provider Agreement. "Sponsor" is defined in that contract as "any contracted client of ESI related to a Prescription Drug Program." FAC ¶ 61. As AHF itself pleads, Prime was a contracted client of Express Scripts related to a Prescription Drug Program. As a result, treating Prime as a Sponsor did not breach the contract, but rather complied with its express terms. Moreover, it was entirely consistent with the benefit AHF bargained for under the contract: AHF sold pharmacy services to health plans that wanted to use Express Scripts' pharmacy networks, under the rates and terms of the 2017 Pharmacy Provider Agreement. As alleged, Express Scripts breached no contractual duty nor implied covenant.

*Third*, AHF's unfair trade practices claim is mere "threadbare recitals" of the elements and "conclusory statements," so it must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For these reasons, Express Scripts and Accredo respectfully move the Court to dismiss all of AHF's claims with prejudice.

## BACKGROUND[1]

Express Scripts is a PBM. FAC ¶ 1. PBMs manage pharmaceutical benefits for health

---

[1] Defendants assume the facts alleged in the Complaint are true solely for this motion to dismiss.

plans. *Id.* ¶ 53. Among other services, PBMs create networks that connect pharmacies and health plans, manage the prescription drug benefit set by a patient's health plan, and facilitate payments for prescription drugs between health plans and pharmacies (reimbursements). *Id.* ¶¶ 23, 53.

PBMs with more health plan clients and covered patients (members) are often able to negotiate lower reimbursement rates, so their health plan clients pay less for prescription drugs. *See id.* ¶¶ 20, 28. Express Scripts is one of the three largest PBMs and negotiates "low reimbursement rates" from pharmacies on behalf of its health plan clients. *Id.* ¶¶ 21, 28, 72.

Pharmacies that participate in Express Scripts' pharmacy networks must enter into a Pharmacy Provider Agreement with Express Scripts. *Id.* ¶ 29. Over 67,000 retail pharmacies across America participate in Express Scripts' pharmacy networks, including AHF. *Id.* ¶¶ 9, 10, 29.

Express Scripts reimburses AHF pursuant to the terms of AHF's 2017 Pharmacy Provider Agreement and its subsequent amendments. *Id.* ¶¶ 29–32. These agreements include performance-based incentives, measured according to quality metrics set by the Centers for Medicare & Medicaid Services ("CMS"), which provide that high performing pharmacies earn more, and low performing pharmacies earn less. *Id.* ¶¶ 38–40.

On July 12, 2022, AHF filed a complaint against Express Scripts alleging breach of contract, breach of the implied covenant of good faith and fair dealing, "unenforceable unconscionable contracts," and unfair trade practices claims. *AIDS Healthcare Found. v. Express Scripts, Inc.*, Case No. 4:22-cv-00743-AGF, ECF No. 1 (E.D. Mo.). AHF then amended its complaint on October 3, 2022. *Id.*, ECF No. 23 ("2022 FAC"). There, AHF claimed that Express Scripts used its bargaining leverage to impose one-sided, opaque contract terms in the 2017 Pharmacy Provider Agreement and later amendments, including performance-based incentives, which allegedly resulted in low reimbursement rates. 2022 FAC at ¶¶ 19–21, 25, 28, 30, 46, 47.

Express Scripts moved to dismiss. After hearing oral argument on February 2, 2023, the Court issued an Order on February 28, 2023, dismissing all AHF's claims with prejudice because AHF failed to allege a plausible claim for relief. *AIDS Healthcare Found*, 658 F. Supp. 3d at 697.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I.    AHF's Claims Are Barred By Res Judicata

Missouri law controls the application of res judicata principles in this case because the prior AHF action was based upon diversity jurisdiction. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012). Under Missouri law, "[t]he common-law doctrine of res judicata precludes relitigation of a claim formerly made." *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. 2002) (en banc). "The modern term" for the doctrine is "claim preclusion," which precludes a litigant from bringing, in a subsequent lawsuit, claims that should have been brought in the first suit. *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715 (Mo. 2008). "As such, the doctrine applies to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* at 715–16 (citation omitted). "Improper splitting of claims occurs when a party sues on a claim which arises out of the same 'act, contract or transaction' as the previously litigated claims." *Id.* (citation omitted). "The term 'transaction' has a broad meaning," which "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Chesterfield*

*Village*, 64 S.W.3d at 319. To determine if claims arise from the same act, contract, or transaction, "a court looks to the factual bases for the claims, not the legal theories." *Id*.

### A.    AHF's Claims Arise From The Same Facts And Conduct As Its Previously Dismissed Action And Seek The Same Remedies

AHF's claims here arise from the same operative facts as AHF's prior case. Had AHF exercised reasonable diligence, it could have (and should have) asserted these claims in that case.

*First*, AHF's claims in both cases arise from the 2017 Pharmacy Provider Agreement. *Compare AIDS Healthcare Found.*, 658 F. Supp. 3d at 698–99 ("AHF and Express Scripts initially contracted in 2017 . . . . Express Scripts amended the parties' contract in 2019 and 2020, in order to include a performance adjustment program that effectively reduced the reimbursement rates Express Scripts paid to AHF for filling patient prescriptions.") *with* FAC ¶¶ 29, 31 ("AHF entered into a Pharmacy Provider Agreement ('Agreement') with ESI on October 10, 2017," which "has literally or effectively been unilaterally amended from time to time by ESI" and "reduced AHF's reimbursement rates every year (except 2023)"). AHF's new claims are therefore precluded. *See Epice Corp. v. Land Reutilization Auth. of City of St. Louis*, 608 S.W.3d 725, 730–31 (Mo. Ct. App. 2020) (claims arising from same contractual transactions as prior case barred by res judicata).

*Second*, both cases turn on the same alleged conduct, namely: (1) Express Scripts has bargaining power, *compare* 2022 FAC ¶¶ 19–21 *with* FAC ¶¶ 28–29, 31; (2) Express Scripts uses this bargaining power to impose allegedly one-sided, arbitrary, and opaque contractual terms on AHF, including performance incentives, *compare* 2022 FAC ¶¶ 21, 46, 47 *with* FAC ¶¶ 28–31, 36–40, 67; and (3) these terms result in reimbursement rates that AHF says are too low, *compare* 2022 FAC ¶¶ 21–22, 24, 47, 53 with FAC ¶¶ 3, 28, 31–32, 50, 66–67. The claims here are thus "based on the same operative facts" as the prior action, and they are barred by res judicata. *See Suppes v. Curators of Univ. of Mo.*, 613 S.W.3d 836, 850 (Mo. Ct. App. 2020).

**Third**, both cases seek the same remedies: (1) an injunction prohibiting Express Scripts from enforcing the terms of the 2017 Pharmacy Provider Agreement and the subsequent amendments; and (2) damages attributable to pre-2023 reimbursement rates. *Compare AIDS Healthcare Found.,* 658 F. Supp. 3d at 701 *with* FAC Prayer for Relief ¶ 1. That AHF seeks the same form of relief now as then proves that its new claims are not "separate" claims. *See Kesterson,* 242 S.W.3d at 716 ("In order for a subsequent claim on the same transaction to be considered separate, however, there must be new ultimate facts . . . that **form a new claim for relief**.") (emphasis added).

AHF cannot avoid res judicata by dressing up old grievances about a contract that it already sued on—and lost on—as new theories of harm. "Claim preclusion prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced to support it." *Suppes,* 613 S.W.3d at 850 (citing *Chesterfield Village,* 64 S.W.3d at 320). AHF's claims in its last case turned on the same allegations that form its antitrust claims now, namely: Express Scripts' alleged bargaining power affected the terms of the 2017 Pharmacy Provider Agreement. AHF admits that Express Scripts told AHF in January 2021 about the reimbursement rates that AHF now alleges breached that contract in January 2021 (*i.e.*, 18 months before AHF filed the first action). FAC ¶ 66. "[C]laim preclusion, prohibits a party from bringing any previously-litigated claim and any claim that, with the exercise of reasonable diligence, should have been brought in that prior suit." *Suppes,* 613 S.W.3d at 848 (quoting *Kesler v. Curators of the Univ. of Mo.,* 516 S.W.3d 884, 890 (Mo. Ct. App. 2017)). Courts routinely dismiss such attempts to relitigate old claims. *See, e.g., Suppes,* 613 S.W.3d at 848 (later breach of contract and good faith and fair dealing claims barred by prior claims based on same operative facts); *Cent. Garden & Pet Co. v. Scotts Co.,* 85 F.App'x 633, 634 (9th Cir. 2004) (antitrust claim precluded

by failed contract claim because the "antitrust claims arose out of the same transactions"); *Norman Tobacco & Cando Co. v. Gillette Safety Razor Co.*, 295 F.2d 362, 363–64 (5th Cir. 1961) (same).

AHF's claims here turn on the same operative facts as its prior, failed suit; at a minimum, they are related claims that AHF reasonably could have brought at that time. Thus, they are barred by res judicata. *See Chesterfield Village*, 64 S.W.3d at 318.

### B.    AHF's Claims Involve The Same Parties As Its Previously Dismissed Action, And Accredo Is In Privity With Express Scripts

Nor can AHF avoid dismissal by adding Accredo as a named defendant in this case. "While it is true that res judicata only applies where there is an identity of persons and parties to the action, the party in the present action need not have been a party to the prior action, so long as the party was in privity with one of the parties to the action." *Palmore v. City of Pac.*, 393 S.W.3d 657, 667 (Mo. Ct. App. 2013) (cleaned up). Express Scripts was a defendant in the prior case, and Accredo is a wholly-owned subsidiary of Express Scripts. FAC ¶ 10. Corporate affiliates are in privity. *See* Restatement (Second) of Judgments § 59 cmt. e (Am. L. Inst. 1982) (privity is "most likely when the controlling owner is the parent of a subsidiary corporation, for in that case what is usually involved is a single enterprise organized in multiple legal forms"); *see also, e.g.*, *Daredevil, Inc. v. ZTE Corp.*, 1 F.4th 622, 628 (8th Cir. 2021). Accredo is therefore in privity with Express Scripts.

## II.    The FAC Fails To State A Plausible Claim For Relief

### A.    AHF Fails To Allege A Plausible Antitrust Claim

AHF's antitrust claims aim to ***increase*** the prices that AHF can charge health plans and their members—consumers—for prescription drugs. That is the opposite of what the antitrust laws are intended to do. "Congress designed the Sherman Act as a consumer welfare prescription." *Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 107 (1984). The antitrust laws protect competition for the benefit of consumers, because competition results in

lower prices and increased output. *See id.* Because "it is axiomatic that the antitrust laws were passed for the protection of *competition*, not competitors," *Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 446 (8th Cir. 2023) (cleaned up), claims like AHF's are not actionable under the Sherman Act, *see Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 226–27 (1993) ("It would be ironic indeed if . . . antitrust suits themselves became a tool for keeping prices high.").

### 1.    AHF Fails To Allege Antitrust Injury

"[A]ntitrust injury is a threshold issue that plaintiffs must establish in order to have standing to sue under the antitrust laws." *Fischer v. NWA, Inc.*, 883 F.2d 594, 597 n.5 (8th Cir. 1989). "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *ARCO*, 495 U.S. at 344. Failure to plead a plausible antitrust injury requires dismissal. *See, e.g.*, *Niemann v. Carlsen*, 2023 WL 4198227, at *10–11 (E.D. Mo. June 27, 2023); *TheMLSonline.com, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*, 840 F. Supp. 2d 1174, 1179–80 (D. Minn. 2012).

AHF does not allege a plausible antitrust injury. The fundamental "injury" AHF identifies is that AHF is "forced" to sell pharmaceutical drugs at ***lower*** prices than AHF would like. *See* FAC ¶¶ 28, 78, 87, 96. AHF complains that Express Scripts has "reduced AHF's reimbursement rates every year." *Id.* ¶ 31; *see also id.* ¶ 28 (Express Scripts pays AHF "low reimbursement rates"). These low prices, AHF says, "caused AHF and other specialty pharmacies to suffer injury to their business." *Id.* ¶¶ 78, 87, 96. But "[l]ow prices ***benefit*** consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to *antitrust* injury." *ARCO*, 495 U.S. at 340 (emphasis added); *see also Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 343 (8th Cir. 1995) ("[T]he Supreme Court has urged great caution and a skeptical eye when dealing with unfair pricing claims.").

Importantly, AHF does not bring a predatory pricing claim nor allege the facts to support

one. "To prevail on a predatory pricing claim, a plaintiff must demonstrate that: (1) the prices complained of are below an appropriate measure of its rival's costs; and (2) there is a dangerous probability that the defendant will be able to recoup its investment in below-cost prices." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (cleaned up). AHF does not allege that Express Scripts or Accredo sets prices below cost. And, as described below, *infra* § II.A.2.b., there is no "dangerous probability" that Express Scripts or Accredo will drive competition out of the specialty pharmacy market—let alone recoup any associated losses.

Instead, the "anticompetitive scheme" that AHF alleges, FAC ¶ 37, resembles a so-called "price squeeze." *See Mahaska Bottling Co. v. PepsiCo Inc.*, 271 F. Supp. 3d 1054, 1068 (S.D. Iowa 2017). "In a price squeeze, a vertically integrated firm with market power in an upstream (input) market 'squeezes' its competitors' profit margins by (1) raising the price of the essential input (2) while also lowering prices in the downstream (end-product) market in which the vertically integrated firm competes with the 'squeezed' firm." *Id.* (citing *Pac. Bell*, 555 U.S. at 449). AHF alleges essentially this tactic. Upstream, AHF claims that Express Scripts uses its supposed PBM market power to "force" AHF to accept "low reimbursement rates" (low prices) to sell prescriptions to Express Scripts' PBM patient base. *See* FAC ¶¶ 28, 33. But these low prices are merely Express Scripts refusing to deal with AHF on AHF's preferred terms (higher prices), which is Express Scripts' right. *See Mahaska Bottling,* 271 F. Supp. 3d at 1070 ("The antitrust laws, however, do not impose a duty on [Express Scripts], even if it is a monopolist, to set its prices in a way that preserves [AHF's] margins."). Then, downstream in the specialty pharmacy market, AHF claims these low prices are "unsustainable," such that AHF will not be able to "compete effectively" against Express Scripts' vertically integrated pharmacy, Accredo. FAC ¶¶ 33, 83. AHF alleges this will squeeze it out of the specialty pharmacy market in the "long-term." *Id.* ¶ 4.

9

"However, the antitrust laws do not prohibit price squeezes as such." *Mahaska Bottling*, 271 F. Supp. 3d at 1068 (citing *Pac. Bell*, 555 U.S. at 452, 456). "The antitrust laws see a price squeeze as two distinct actions: the charging of high upstream prices and of low downstream prices." *Id.* (citing *Pac. Bell*, 555 U.S. at 452, 456). As a PBM upstream, Express Scripts "has no antitrust duty to deal with its competitors" and "certainly has no duty to deal under terms and conditions that the rivals find commercially advantageous." *See id.* Accredo, as a downstream competitor to AHF, may charge whatever price it likes, so long as it is not engaging in predatory pricing (not alleged here). *See id.* AHF's "price-squeeze claim . . . is thus nothing more than an amalgamation of a meritless claim at the [specialty pharmacy] level and a meritless claim at the [PBM] level." *Pac. Bell*, 555 U.S. at 452. "If there is no duty to deal at the [PBM] level and no predatory pricing at the [specialty pharmacy] level, then [Express Scripts] is certainly not required to price both of these services in a manner that preserves [AHF's] profit margins." *Id.*

AHF's factual allegations confirm that competition in the specialty pharmacy market is alive and well—not restrained or suppressed by the 2017 Pharmacy Provider Agreement. AHF continues to compete with Accredo to this day, and it has been competing against Accredo since the contract it challenges was first instituted in 2017. FAC ¶¶ 26, 29. AHF acknowledges that there is a larger specialty pharmacy competitor than Accredo, CVS Specialty Pharmacy. *Id.* ¶ 10. While AHF alleges that Accredo has a 24% national market share in the specialty pharmacy market, that means as alleged, ***76% of specialty pharmacies are other specialty pharmacy competitors***. *See id.* As a matter of law, this is not a monopolized market or close to becoming one. *See infra* § II.A.2.b.

AHF's claims here echo antitrust claims brought by other pharmacies against PBMs that courts rejected at the motion to dismiss stage. *See, e.g.*, *Wholesale All., LLC v. Express Scripts, Inc.*, 366 F. Supp. 3d 1069, 1074 (E.D. Mo. 2019) (dismissing pharmacy organization's antitrust

claim that alleged Express Scripts imposed anticompetitive, "punitively low and non-negotiable reimbursement rates," "fees," and "administrative burdens" on independent pharmacies); *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 2019 WL 1207866, at \*5–6 (E.D. Mo. Mar. 14, 2019) (dismissing plaintiff pharmacies' attempted monopolization claims in which plaintiffs alleged they were "injured by the loss of revenue derived from [Express Scripts' pharmacy] refilling their customers' prescriptions," concluding "Plaintiffs have not alleged any conduct that may adversely affect customers") (citations omitted), *aff'd*, 974 F.3d 845 (8th Cir. 2020); *Physician Specialty Pharmacy, LLC v. Prime Therapeutics, LLC*, 2019 WL 1239705, at \*6–8 (D. Minn. Jan. 24, 2019) (dismissing an antitrust claim that a PBM allegedly used its 90% market share in the Alabama PBM market to eliminate competition in the Alabama specialty pharmacy market), *report and recommendation adopted*, 2019 WL 1399571 (D. Minn. Mar. 28, 2019).

AHF's desired remedy also belies any claimed antitrust injury. AHF effectively asks this Court to order Express Scripts—and therefore its clients (health plans and their members)—to pay **higher prices** for prescription drugs, so that AHF can make more money. But, "[a] firm complaining about the harm it suffers from nonpredatory price competition is really claiming that it is unable to raise prices. This is not antitrust injury." *ARCO*, 495 U.S. at 337–38 (cleaned up).

An antitrust "plaintiff 'must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself.'" *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491 F.3d 380, 390 (8th Cir. 2007) (quoting *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135, (1998)). AHF has failed to do so. Its antitrust claims must be dismissed.

### 2.    AHF Does Not Allege Market Power Or A Dangerous Probability Of Achieving Market Power

To prevail on its antitrust claims, AHF must plausibly allege that the Louisiana specialty pharmacy market is a relevant antitrust market and that Accredo has market power in that market

or is dangerously close to achieving it. Market power (also called "monopoly power") is the power of a firm to "control prices or exclude competition," *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d 1015, 1024 (8th Cir. 2020), and typically requires a market share, in a properly defined relevant antitrust market, in excess of 60%, *F.T.C. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1052 n.10 (8th Cir. 1999) ("Market shares of less than 60% are generally not sufficient to create an inference of monopoly power."). AHF's putative Louisiana specialty pharmacy market is implausible on its face and, in any event, AHF does not plausibly allege Accredo has anything close to market power in that market.

### a. The Alleged Louisiana Specialty Pharmacy Market Is Implausible

AHF brings two antitrust claims, under Section 1 and Section 2 of the Sherman Act.[2] Both require AHF to plausibly allege that Express Scripts' specialty pharmacy, Accredo, has or is dangerously close to achieving market power in a properly defined relevant market. *See Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1231 (8th Cir. 1987) (Section 1 rule of reason claim[3] requires establishing "the defendant's substantial market power in a relevant market"); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 974 (8th Cir. 1972) (Section 2 attempted monopolization claim requires proving there is "a dangerous probability" that the defendant will acquire market power).

---

[2] AHF asserts two causes of action under Section 2, "Attempted Monopolization" (Count I) and "Monopoly Leveraging" (Count II). These causes of action have the same elements of proof. While courts had entertained a potential "monopoly leveraging" theory under Section 2 in the past, which removed a plaintiff's burden to establish that the defendant had a "dangerous probability" of achieving monopoly power as required for an attempted monopolization claim, the Supreme Court rejected that approach. *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004) ("The Court of Appeals also thought that respondent's complaint might state a claim under a 'monopoly leveraging' theory . . . . We disagree. To the extent the Court of Appeals dispensed with a requirement that there be a 'dangerous probability of success' in monopolizing a second market, it erred.") (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993)).

[3] AHF's Section 1 claim must be assessed under the rule of reason. AHF does not allege a per se violation of Section 1. As a wholly-owned subsidiary, Accredo cannot conspire with Express Scripts as a matter of law. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 770 (1984).

"The definition of the relevant market has two components—a product market and a geographic market." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018). "The relevant product market includes all reasonably interchangeable products." *Id.* And a "geographic market is a geographic area in which the seller operates, and to which purchasers can practicably turn for supplies." *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598 (8th Cir. 2009) (cleaned up).

The putative market alleged by AHF—the Louisiana specialty pharmacy market—is not a properly defined relevant market because it is both overinclusive and underinclusive on its face. AHF alleges that the relevant product market includes all specialty pharmacies—both mail-order and brick-and-mortar. FAC ¶ 57. AHF also alleges that the market includes all specialty pharmacies across the entire state of Louisiana—but not brick-and-mortar pharmacies situated just across the state's borders. *Id.* ¶ 59.

A remarkably similar specialty pharmacy market definition was rejected on a motion to dismiss in *Physician Specialty Pharmacy*. There, the plaintiff alleged an "Alabama specialty and mail-order pharmacy market." 2019 WL 1239705, at *4. Like AHF's alleged Louisiana specialty pharmacy market, the plaintiff's market definition included all specialty pharmacies across the state of Alabama, including both brick-and-mortar and mail-order specialty pharmacies, but no pharmacies across the state line. *Id.* at *5. The magistrate recommended granting a motion to dismiss, finding such an alleged statewide specialty pharmacy market was implausible in both product and geographic scope. *Id.* For one, the magistrate noted, brick-and-mortar and mail-order pharmacies are often not substitutes. *Id.* ("[A] person who requires mail-order prescription drug services could not obtain those services from a specialty pharmacy storefront."). Further, such a statewide geographic market made no sense, given that patients look for brick-and-mortar

pharmacies near where they live—not across the entire state—and not necessarily on one side of a state border but not the other. *Id.* After conducting its own *de novo* review, the district court agreed and granted the motion to dismiss. 2019 WL 1399571, at *1.

The same reasoning applies here. AHF's arbitrary statewide market assumes that "a patient who fills his or her prescription at a [brick-and-mortar] specialty pharmacy located on the western border of [Louisiana] could reasonably turn to a similar pharmacy located on the other side of the state to fill that prescription." *See Physician Specialty Pharmacy*, 2019 WL 1239705, at *5. Put another way, AHF suggests that a patient will drive hundreds of miles across the state merely to fill a prescription. Yet, at the same time, AHF's state-bounded market assumes a patient on the western border of Louisiana would ***not*** be willing to drive a few miles across the border into Texas, if a Texas pharmacy was closer than the nearest Louisiana pharmacy. This defies both common sense and AHF's allegation that "access to *local* brick and mortar pharmacies" is important to patients. *See* FAC ¶ 50 (emphasis added). AHF's Louisiana specialty pharmacy market "is therefore not plausible." *See Physician Specialty Pharmacy*, 2019 WL 1239705, at *5.

### b. Even If AHF's Market Definition Were Plausible, AHF Has Not Alleged That Accredo Has Anything Close To Market Power

AHF's factual allegations also confirm that the purported specialty pharmacy market is actually fragmented and highly competitive. This precludes a finding that Accredo has or is likely to achieve market power, which is a necessary element of AHF's antitrust claims.

Market power is typically shown by a firm's "dominant" share in the relevant market. *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 926 (E.D. Mo. 2010). Alternatively, a plaintiff must establish "the exercise of actual control over prices or the actual exclusion of competitors." *Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.*, 789 F. Supp. 2d 1133, 1144 (D. Minn. 2011) (*quoting Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1018 (6th Cir.

14

1999)). AHF alleges neither. AHF's allegations confirm Accredo does not have a dominant share of the specialty pharmacy market and cannot exercise control over prices or exclude competitors.

***First***, AHF's market share allegations preclude the inference that Accredo has market power or is close to achieving it. AHF alleges that Accredo's national market share of the specialty pharmacy market is 24%. FAC ¶ 10. For a Section 1 claim, a "market share of 30% or less . . . is insufficient as a matter of law to establish 'substantial market power.'" *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *8 (D. Minn. Apr. 5, 2022) (quoting *McWane, Inc. v. FTC*, 783 F.3d 814, 837 (11th Cir. 2015)). Likewise, a share of 30% is so low that it also cannot establish a "dangerous probability" of achieving market power, as would be required for a Section 2 attempted monopolization claim. *See Mahaska Bottling*, 271 F. Supp. 3d at 1076 (noting that "[c]laims involving between 30% and 50% shares should usually be rejected" and that other courts have ruled there is "a safe harbor for defendants with alleged market shares of less than 30%," which is "presumptively insufficient to establish . . . a dangerous probability of achieving monopoly power") (cleaned up) (collecting cases).

AHF's assertion that "[t]here is a dangerous probability that ESI/Accredo will . . . monopolize the specialty pharmacy market" because "upon information and belief its market share in Louisiana is significantly higher" than 24% bears no weight. FAC ¶ 74. Courts routinely dismiss claims that rely on similar conclusory and superficial allegations about a defendant's market share. *See, e.g.*, *Process Controls*, 753 F. Supp. 2d at 928 (the "failure to include any factual detail about [Defendant's] or [Plaintiff's] own market share" meant the court "cannot reasonably infer that [Defendant] monopolized or is in dangerous proximity to monopolizing the [relevant] market."); *Niemann*, 2023 WL 4198227, at *13 (failure to plausibly allege the defendant "possessed sufficient market share" required dismissal). Simply put, AHF has failed to allege any specific facts that

would suggest Accredo holds a market share remotely approaching the level ordinarily required to prove market power. *See Morgenstern v. Wilson*, 29 F.3d 1291, 1296 n.3 (8th Cir. 1994) ("An eighty percent market share is within the permissible range from which an inference of monopoly power can be drawn . . . . As a matter of law, absent other relevant factors, a thirty percent market share will not prove the existence of monopoly power."); *see also, e.g.*, *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *6–7 (E.D. Mo. Jan. 22, 2008) (75% to 90% market share was sufficient, but a 20% market share was not); *Foam Supplies, Inc. v. The Dow Chem. Co.*, 2007 WL 4210354, at *5 (E.D. Mo. Nov. 27, 2007) ("Under Eighth Circuit precedent, I may infer that monopoly power exists when a business entity has a ninety percent or greater market share and I may infer that there is no monopoly power when the market share is thirty-three percent or less.").

**Second**, AHF's factual description of the specialty pharmacy market contradicts its assertion that Accredo has or is close to achieving market power. AHF does not allege that Accredo is the dominant specialty pharmacy. Rather, AHF alleges Accredo is **not** the largest specialty pharmacy: CVS Specialty Pharmacy is. *See* FAC ¶ 10. AHF acknowledges that **competitors make up 76% of specialty pharmacies nationwide**. *See id.* (Accredo's national market share is allegedly only 24%). These other specialty pharmacies **currently compete**, despite the existence of the 2017 Pharmacy Provider Agreement. *See id.* ¶¶ 9–10, 28–29. And all this competition has happened despite the fact that the contract has been in place since 2017. *Id.*

Tellingly, AHF's allegations indicate that even Express Scripts itself **does not** include Accredo in many of Express Scripts' own pharmacy networks in Louisiana. As alleged, up to **almost half of Express Scripts' Medicare Part D plan offerings in Louisiana do not include Accredo**. *See id.* ¶ 11 ("ESI is constructing health-plan offerings that incorporate Accredo for . . . more than 50% of [its Medicare Part D] plans in Louisiana"). AHF does not allege that Express

Scripts is excluding Accredo's competitors from Express Scripts' own Louisiana pharmacy networks—let alone from all or nearly all pharmacy networks across the state—as would be true if Accredo or Express Scripts had, or was close to having, monopoly power.

AHF's "allegations do not indicate a market dominated by one firm, but rather a market with several participants who compete with each other." *Process Controls*, 753 F. Supp. 2d at 928. AHF has not plausibly pleaded that the 2017 Pharmacy Provider Agreement "adversely affected competition" in the Louisiana specialty pharmacy market or that Accredo is "dangerously close to monopolizing" that market. *See Niemann*, 2023 WL 4198227, at *12–13.

### B.    AHF Fails To Allege A Plausible Contract Claim

As alleged, Express Scripts breached no contractual provision nor implied covenant, because Express Scripts complied with the express terms of the 2017 Pharmacy Provider Agreement and did not deprive AHF of its bargained-for benefit under the contract. *See AIDS Healthcare Found.*, 658 F. Supp. 3d at 702–03.

### 1.    Express Scripts Did Not Breach The Contract Because Express Scripts Complied With The Express Terms Of The Contract

"Under Missouri law, a breach of contract action requires a plaintiff to allege 'the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach.'" *Id.* at 702 (emphasis omitted) (quoting *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)). AHF fails to plead a breach of the contract; to the contrary, the FAC confirms that Express Scripts *complied* with the terms of the 2017 Pharmacy Provider Agreement.[4]

---

[4] AHF's complaint directly refers to terms of the 2017 Pharmacy Provider Agreement (Ex. 1), so the Court may consider the contract without converting this motion to dismiss into a motion for summary judgment. *See Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013).

Section 1.9 of the 2017 Pharmacy Provider Agreement defines a "Sponsor" as "any contracted client of ESI related to a Prescription Drug Program." Ex. 1 § 1.9. Section 1.5 defines a Prescription Drug Program as "any group or individual plan, policy, agreement or other arrangement offered or provided by a Sponsor, which includes payment for pharmacy services or pharmaceutical products or benefits related to the use of pharmaceutical products." *Id.* § 1.5. As defined, the term Sponsor is "clear and unambiguous." *See J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.*, 881 S.W.2d 638, 644 (Mo. Ct. App. 1994). "When a contract is unambiguous, the intent of the contract is discerned solely from the contract's language." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 183 (Mo. 2015).

AHF's allegations confirm that Prime was a "Sponsor" as defined by the contract. AHF alleges: "In December 2019, Prime, a PBM competing with ESI, entered into an agreement with ESI that permitted some health-plan sponsors using Prime for PBM services to switch over from using Prime pharmacy networks to using ESI's pharmacy networks." FAC ¶ 63. As a result, "AHF was reimbursed by Prime (but at objectionable rates generated by the ESI-Prime arrangement)" for services that AHF provided to Prime's health plan clients using Express Scripts' pharmacy networks. *Id.* ¶¶ 65–66. As alleged, Prime was a "Sponsor" because: (1) Prime had an agreement with Express Scripts and was thus "a contracted client of Express Scripts," Ex. 1 § 1.9; (2) Prime's contract with Express Scripts related to a "Prescription Drug Program," *i.e.*, an "arrangement offered or provided by [Prime], which includes payment for pharmacy services . . . ," *id.* § 1.5.

Like AHF's failed breach of contract claim in its last case: "AHF has not identified how Express Scripts' [treatment of Prime as a "Sponsor"] violated the terms of the parties' contracts . . . . Because [treatment of Prime as a "Sponsor"] complied with the terms of the parties' contract, as amended, AHF's breach of contract claim fails as a matter of law." *See AIDS Healthcare*

18

*Found.*, 658 F. Supp. 3d at 702. The same reasoning applies here, and it requires dismissal.

> ### 2. Express Scripts Did Not Breach The Implied Covenant Of Good Faith And Fair Dealing Because It Complied With The Express Terms Of The Contract And AHF Got Its Bargained-for Benefit

"Under Missouri law, generally, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *Id.* at 703 (quoting *Park Irmat*, 911 F.3d at 513). "[T]he implied covenant is breached only if a party exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement." *Id.* (quoting *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 808 F.3d 747, 751 (8th Cir. 2015)).

AHF's implied covenant claim is identical to its breach of contract claim, *i.e.*, that Express Scripts improperly treated Prime as a "Sponsor" under the 2017 Pharmacy Provider Agreement. *Compare* FAC ¶¶ 105–109 *with id.* ¶¶ 110–116. But Prime was a Sponsor, as expressly defined by the contract, so there "can be no breach of the [implied covenant]," as "the contract expressly permits the actions being challenged, and [Express Scripts] act[ed] under the express terms of the contract." *See Siebert v. Peoples Bank*, 632 S.W.3d 461, 469 (Mo. Ct. App. 2021).

Moreover, AHF got the benefit of its bargain. AHF contracted with Express Scripts to sell services to health plans that wanted to use Express Scripts' pharmacy networks, under the rates and terms of the 2017 Pharmacy Provider Agreement. FAC ¶ 29 ("In order to access and serve patients in ESI's network, AHF must enter into a network contract with ESI. AHF entered into a Pharmacy Provider Agreement ('Agreement') with ESI on October 10, 2017."). That is precisely what AHF got. The Prime-ESI arrangement allowed "some health-plan sponsors . . . to switch over from using Prime pharmacy networks to using ESI's pharmacy networks." *Id.* ¶ 63. AHF was then paid under the terms of the contract for the services it provided to those health plans. *Id.* ¶ 65–66.

At its core, AHF's complaint is that health plans were allowed to switch from Prime's network (where they would have paid AHF higher rates) to Express Scripts' network (where they instead paid AHF lower rates). But which PBM network health plans choose to use is not up to AHF. It is up to the health plans. The fact that many health plans choose to use Express Scripts' pharmacy networks, and some choose to do so via the Prime-Express Scripts agreement, is expressly permitted by the 2017 Pharmacy Provider Agreement. It is certainly not a breach of the implied covenant of good faith and fair dealing. *See Siebert*, 632 S.W.3d at 469 ("The covenant of good faith and fair dealing is not an overflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms.") (citation omitted); *see also Reliance Bank v. Paramont Properties, LLC*, 425 S.W.3d 202, 208 (Mo. Ct. App. 2014) (dismissing implied covenant claim because the facts alleged did not establish an "act[] in bad faith as to defeat the expected benefit or spirit of the [contract]").

### C.    AHF Fails To Allege A Plausible Louisiana Unfair Trade Practices Claim

Louisiana law prohibits PBMs from reimbursing affiliated pharmacies more than other pharmacies "for providing the same services" as "calculated on a per-unit basis using the same generic product identifier or generic code number." R.S. 22:1860.3(A). AHF does not allege Express Scripts paid AHF less than Accredo for the same services on a per-unit basis using the same generic product identifier or code number. AHF merely asserts Express Scripts "reimburses its affiliated specialty pharmacy, Accredo, at rates higher than that provided to AHF for the same services." FAC ¶ 101. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not state a plausible claim. *See Iqbal*, 556 U.S. at 678.

### <u>CONCLUSION</u>

For these reasons, Express Scripts and Accredo respectfully submit that the First Amended Complaint should be dismissed with prejudice.

Dated: October 30, 2024                    Respectfully submitted,


                                           By:  */s/ Sarah C. Hellmann*
                                           Sarah C. Hellmann, #50373(MO)
                                           HUSCH BLACKWELL LLP
                                           8001 Forsyth Boulevard, Suite 1500
                                           St. Louis, MO 63105
                                           P: (314) 480-1500
                                           F: (314) 480-1505
                                           sarah.hellmann@huschblackwell.com

                                           Michael J. Lyle (*pro hac vice*)
                                           Eric C. Lyttle (*pro hac vice*)
                                           Meghan A. McCaffrey (*pro hac vice*)
                                           Michael D. Bonanno (*pro hac vice*)
                                           Jonathan G. Cooper (*pro hac vice*)
                                           Ryan T. Andrews (*pro hac vice*)
                                           Samuel J. Johnson (*pro hac vice*)
                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
                                           1300 I Street, NW, Suite 900
                                           Washington, D.C. 20005
                                           P: (202) 538-8000
                                           F: (202) 538-8100
                                           mikelyle@quinnemanuel.com
                                           ericlyttle@quinnemanuel.com
                                           meghanmccaffrey@quinnemanuel.com
                                           mikebonanno@quinnemanuel.com
                                           jonathancooper@quinnemanuel.com
                                           ryanandrews@quinnemanuel.com
                                           samueljohnson@quinnemanuel.com

                                           *Attorneys for Defendants Express Scripts, Inc.*
                                           *and Accredo Health Group, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of October 2024, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

*/s/ Sarah C. Hellmann*
Sarah C. Hellmann