**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION, | |
| Plaintiff, | |
| v. | Case No. 4:24-cv-01043-MTS |
| EXPRESS SCRIPTS, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFF AIDS HEALTHCARE FOUNDATION'S OPPOSITION TO
DEFENDANTS EXPRESS SCRIPTS, INC. AND ACCREDO HEALTH GROUP, INC.'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

AHF's FACTUAL ALLEGATIONS ............................................................................ 2

ARGUMENT ............................................................................................................ 4

I.    The Doctrine of Res Judicata Does Not Apply to AHF's Claims ..................... 4

       A.    The Lawsuits Do Not Arise from the Same Act, Contract or Transaction ............ 4

       B.    The Third and Fourth "Identities" Elements Do Not Apply ................................. 7

II.   AHF Has Properly Alleged Claims That Satisfy the Federal Pleading Standard .............. 8

       A.    AHF Has Properly Pled Its Antitrust Claims ......................................................... 8

               1.    AHF Properly Alleges Antitrust Injury ...................................................... 9

       B.    AHF Has Alleged a Plausible Relevant Market .................................................... 11

               1.    The Louisiana Specialty Pharmacy Market Is Plausible ........................... 12

               2.    AHF's Geographic Market Is Plausible ..................................................... 13

       C.    AHF Has Plausibly Alleged That Accredo Has Market Power ........................... 15

III.  AHF's Contract Claims Are Well Pled ........................................................... 18

       A.    The Term "Sponsor" Was Not Intended to Include a PBM ................................. 18

       B.    Breach of the Implied Covenant of Good Faith and Fair Dealing Is Well
             Pled ........................................................................................................................ 19

       C.    AHF Has Alleged a Claim Under the LUTPA ..................................................... 20

CONCLUSION ........................................................................................................ 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*3M v. Appleton Papers, Inc.,*
    35 F. Supp. 2d 1138 (D. Minn. 1999) ................................................................... 15

*Affordable Cmtys. of Mo. v. Fed. Nat'l Mtg. Assn.,*
    714 F.3d 1069 (8th Cir. 2013) ................................................................... 18, 19

*AHF v. ESI.,*
    658 F. Supp. 3d 693 (E.D. Mo. 2023) ................................................................... 19

*Arbors at Sugar Creek Homeowners Assn. v. Jefferson Bank & Tr. Co.,*
    464 S.W.3d 177 (Mo. 2015) ................................................................... 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................... 20

*ASI Industries GMBH v. MEMC Electronic Materials, Inc.,*
    2006 WL 8458683 (E.D. Mo. Nov. 1, 2006) ................................................................... 15

*Best Pallets Inc. v. Brambles Indus., Inc.,*
    2008 WL 3539627 (W.D. Ark. Aug. 11, 2008) ................................................................... 16

*Braden v. Wal-Mart, Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ................................................................... 9, 20

*Broadcom Corp. v. Qualcomm Inc.,*
    501 F.3d 297 (3d Cir. 2007) ................................................................... 16

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ................................................................... 9

*Burns v. Smith,*
    303 S.W. 3d 505 (Mo. banc 2010) ................................................................... 18

*Cent. Garden & Pet Co v. Scotts Co.,*
    85 F. App'x 633 (9th Cir. 2004) ................................................................... 7

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.,*
    808 F.3d 747 (8th Cir. 2015) ................................................................... 19

*Clements v. Pittman,*
    765 S.W.2d 589 (Mo. banc 1989) ................................................................... 8

TABLE OF AUTHORITIES *(cont.)*

Page(s)

**Cases** *(cont.)*

*Commonwealth Land Title Ins. Co. v. Miceli,*
    480 S.W. 3d 354 (Mo. Ct. App. 2015) ................................................................. 7

*Craftsman Limousine, Inc. v. Ford Motor Co.,*
    491 F.3d 380 (8th Cir. 2007) ............................................................................ 11

*Daredevil, Inc. v. ZTE Corp.,*
    1 F.4th 622 (8th Cir. 2021) ............................................................................... 8

*Double D Spotting Service, Inc. v. Supervalu, Inc.,*
    136 F.3d 554 (8th Cir. 1998) ........................................................................... 11

*E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,*
    637 F.3d 435 (4th Cir. 2011) ........................................................................... 11

*Eastman Kodak Co. v. Image Tech. Serv., Inc.,*
    504 U.S. 451 (1992) ........................................................................................ 11

*Elam v. City of St. Ann,*
    784 S.W.2d 330 (Mo.App.1990) ....................................................................... 5

*Epice Corp. v. Land Reutilization Auth. of City of St. Louis,*
    608 S.W. 3d 725 (Mo. Ct. App. 2020) ............................................................... 6

*Est. of Talley v. Am. Legion Post 122,*
    431 S.W.3d 544 (Mo. Ct. App. 2014) ................................................................ 6

*Fair Isaac Corp. v. Equifax Inc.,*
    2008 WL 623120 (D. Minn. Mar. 4, 2008) ....................................................... 16

*Fair Isaac Corp. v. Experian Info. Sols. Inc.,*
    645 F. Supp. 2d 734 (D. Minn. 2009) ................................................................ 9

*Farrow v. Brown,*
    873 S.W.2d 918 (Mo. Ct. App. 1994) ................................................................ 5

*Foam Supplies, Inc. v. The Dow Chem. Co.,*
    2007 WL 4210354 (E.D. Mo. Nov. 27, 2007) .................................................... 17

*Foam Supplies, Inc. v. The Dow Chem. Co.,*
    2006 WL 2225392 (E.D. Mo. Aug. 2, 2006) ...................................................... 16

TABLE OF AUTHORITIES *(cont.)*

Page(s)

**Cases** *(cont.)*

*Freedom Smokeless, Inc. v. Rapid Dev. Servs., Inc.,*
 2015 WL 5735201 (E.D. Mo. Sept. 29, 2015) .................................................. 18

*FTC v. Tenet Health Care Corp.,*
 186 F.3d 1045 (8th Cir. 1999) ......................................................................... 17

*Gen. Indus. Corp. v. Hartz Mountain Corp.,*
 810 F.2d 795 (8th Cir. 1987) ...................................................................... 9, 15

*Hewlett-Packard Co. v. Boston Sci. Corp.,*
 77 F. Supp.2d 189 (D. Mass. 1999) ................................................................ 17

*In re EpiPen Direct Purchaser Litig.,*
 2022 WL 1017770 (D. Minn. Apr. 5, 2022) ............................................... 15, 17

*Inline Packaging, LLC v. Graphic Packaging Int'l,*
 164 F. Supp. 3d 1117 (D. Minn. 2016) ...................................................... 10, 14

*Insignia Sys., Inc. v. News Amer. Mktg. In-Store, Inc.,*
 2006 WL 1851137 (D. Minn. June 30, 2006) .................................................. 13

*IQVIA Inc. v. Veeva Sys. Inc.,*
 2018 WL 4815547 (D.N.J. Oct. 3, 2018) ........................................................ 16

*J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.,*
 881 S.W.2d 638 (Mo. Ct. App. 1994) .............................................................. 19

*Kesterson v. State Farm Fire & Cas. Co.,*
 242 S.W. 3d 712 (Mo. 2008) ............................................................................ 7

*L&W/Lindco Prods., Inc. v. Pure Asphalt Co.,*
 979 F. Supp. 632 (E.D. Ill. 1997) ................................................................... 17

*LaBlance v. Dir. of Revenue,*
 658 S.W.3d 505 (Mo. 2022) .............................................................................. 4

*Lauber-Clayton, LLC v. Novus Props. Co.,*
 407 S.W.3d 612 (Mo. Ct. App. 2013) ............................................................... 4

*Little Rock Cardiology Clinic PA v. Baptist Health,*
 591 F.3d 591 (8th Cir. 2009) ..................................................................... 13, 14

TABLE OF AUTHORITIES *(cont.)*

Page(s)

**Cases** *(cont.)*

*Mahaska Bottling Co. v. PepsiCo Inc.,*
  271 F. Supp. 3d 1054 (S.D. Iowa 2017) ................................................................. 10, 12, 17

*Minn. Made Hockey, Inc. v. Minn. Hockey, Inc.,*
  789 F. Supp. 2d 1133 (D. Minn. 2011) ...................................................................... 15, 16

*Missouri Ins. Guar. Assn. v. Wal-Mart Stores, Inc.,*
  811 S.W.2d 28 (Mo. Ct. App. 1991) .................................................................................. 8

*Morgenstern v. Wilson,*
  29 F.3d 1291 (8th Cir. 1994) ................................................................................... 14, 17

*NCAA v. Alston,*
  594 U.S. 69 (2021) ..................................................................................................... 15

*Niemann v. Carlsen,*
  2023 WL 4198227 (E.D. Mo. June 27, 2023) ............................................................ 11, 17

*Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.,*
  295 F.2d 362 (5th Cir. 1961) .......................................................................................... 7

*Pac. Bell Tel. Co. v. Linkline Comms., Inc,*
  555 U.S. 438 (2009) ..................................................................................................... 11

*Park Irmat Drug Corp. v. Express Scripts Holdings Co.,*
  911 F.3d 505 (8th Cir. 2018) ......................................................................................... 13

*Physician Specialty Pharmacy, LLC v. Prime Therapeutics*, LLC,
  2019 WL 1239705 (D. Minn. Jan. 24, 2019) ........................................................... 11, 12, 14

*Process Controls Int'l, Inc. v. Emerson Process Mgmt.,*
  753 F. Supp. 2d 912 (E.D. Mo. 2010) .............................................................................. 17

*Rebel Oil, Inc. v. Atlantic Richfield Co.,*
  51 F.3d 1421 (9th Cir. 1995) ......................................................................................... 17

*Reliance Bank v. Paramont Props., LLC,*
  425 S.W.3d 202 (Mo. Ct. App. 2014) .............................................................................. 19

*Robinson Mech. Contr. Inc. v. PTC Grp.,*
  2017 WL 2377509 (E.D. Mo. June 1, 2017) ..................................................................... 19

TABLE OF AUTHORITIES *(cont.)*

Page(s)

**Cases** *(cont.)*

*Robinson v. Hooker*,
    323 S.W. 3d 418 (Mo. Ct. App. 2010) ............................................................. 6, 7, 8

*Schoenbaum v. E.I. Dupont De Nemours and Co.*,
    517 F. Supp. 2d 1125 (E.D. Mo. 2007), *vacated in part,* 2007 WL 3331291
    (E.D. Mo. Nov. 6, 2007) ................................................................................ 9

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
    2008 WL 199567 (E.D. Mo. Jan. 22, 2008) .................................................... 15, 17

*Serafin v. Serafin*,
    493 S.W.3d 897 (Mo. Ct. App. 2016) ............................................................. 5, 6

*Siebert v. Peoples Bank*,
    632 S.W.3d 461 (Mo. Ct. App. 2021) ............................................................. 19

*Sitzer v. Nat'l Assn. of Realtors*,
    420 F. Supp. 3d 903 (W.D. Mo. 2019) ............................................................ 10

*State at Rel. of Lewis v. Bd. of Zoning Adjustment, Platte Cnty., Mo.*,
    688 S.W.3d 29 (Mo. Ct. App. 2024) ............................................................... 4, 5, 6

*State ex. rel. J.E. Dunn Constr. Co. v. Fairness in Constr. Bd.*,
    960 S.W. 2d 507 (Mo. Ct. App. 1998) ............................................................ 4

*Suppes v. Curators of Univ. of Mo.*,
    613 S.W.3d 836 (Mo. Ct. App. 2020) ............................................................. 7

*The MSLonline.com, Inc. v. Reg'l Multiple Listing Serv. Of Minn., Inc.*,
    840 F. Supp. 2d 1174 (D. Minn. 2012) ........................................................... 11

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) .......................................................................... 11, 12

*Toyota Motor Sales USA Inc. v. Allen Interchange LLC*,
    2023 WL 5206884 (D. Minn. Aug. 14, 2023) .................................................. 9, 10, 12

*Toys-R-Us, Inc. v. FTC*,
    221 F.3d 928 (7th Cir. 2000) ........................................................................ 15

*Trone Health Services, Inc. v. Express Scripts Holding Co.*,
    2019 WL 1207866 (E.D. Mo. Mar. 14, 2019) ................................................. 11

TABLE OF AUTHORITIES *(cont.)*

Page(s)

**Cases** *(cont.)*

*Virgin Atl. Airways Ltd. v. British Airways PLC,*
    872 F. Supp. 52 (S.D.N.Y. 1994) ........................................................ 17

*Whitney v. The Guys, Inc.,*
    700 F.3d 1118 (8th Cir. 2012) ........................................................... 20

*Wholesale All., LLC v. ESI,*
    366 F. Supp. 3d 1069 (E.D. Mo. 2019) ............................................. 11

*Williams v. Fin. Plaza, Inc.,*
    78 S.W.3d 175 (Mo. Ct. App. 2002) .................................................... 7

*Willis Elec. Co., Ltd. v. Polygroup Macau Ltd.,*
    437 F. Supp. 3d 693 (D. Minn. 2020) ........................................... 12, 15

*Zeiser v. Tajkarimi,*
    184 S.W.3d 128 (Mo. Ct. App. 2006) ........................................... 18, 19

**Statutes**

LA Rev. Stat. § 22:1860.3(A) ................................................................. 20

LA Rev. Stat. § 22:1860.3(C) ................................................................. 20

**Other Authorities**

18A Moore's Fed. Prac. & Proc. Juris. § 4460 (3d ed.) ............................ 8

*ABA Antitrust Law Developments* at 640 & n. 318 (9th ed.) .................. 14

DOJ-FTC *Merger Guidelines,* §4.3D.2 (2023) ...................................... 14

The Restatement (Second) of Judgments § 59 cmt. e (Am. L. Inst. 1982) ......... 8

## INTRODUCTION

Defendants Express Scripts, Inc. ("ESI") and Accredo Health Group, Inc. ("Accredo") (collectively, "Defendants"), move to dismiss Plaintiff AIDS Healthcare Foundation's ("AHF") First Amended Complaint ("FAC") based largely on assertions of fact that do not appear in AHF's FAC, and that therefore must be disregarded. Most glaring is Defendants' false suggestion that AHF seeks to raise prices to consumers. This assertion is expressly contradicted throughout the FAC which alleges that Defendants lower specialty pharmacies' reimbursement rates and **raise prices on patients** to line their own pockets. *See e.g.*, FAC ¶¶ 3, 4, 29-48, 50-51, 75-78, 86-87, 95-96. In fact, the FAC alleges that the FTC released a detailed report that discusses how Defendants are increasing costs to patients for their own pecuniary gain. *Id.* ¶¶ 18, 22, 28, 47. At the pleading stage, Defendants' alternative version of the facts must be rejected.

The FAC sets forth allegations that satisfy the elements for antitrust claims under Sections 1 and 2 of the Sherman Act. AHF properly alleges antitrust injury, specifically that AHF and other specialty pharmacies are harmed by Defendants' anticompetitive conduct and patients are harmed through less choice and higher prices. *Id.* ¶¶ 3, 4, 29-48, 50-51, 75-78, 86-87, 95-96. AHF also plausibly alleges a dangerous probability of achieving market power in a proper relevant market. First, AHF alleges a relevant market consisting of both brick-and-mortar and mail-order specialty pharmacies, as consumers in Louisiana can turn to both services for filling prescriptions. *Id.* ¶¶ 57-59. AHF's geographic market is also proper as AHF alleges that both it and Accredo serve patients across the state. *Id.* ¶ 59. Second, case law makes clear that facts supporting exclusion of competitors and control over prices, even without specific market share numbers, are sufficient at the pleading stage. Here, AHF alleges that ESI is the dominant pharmacy benefit manager ("PBM") in the state with more than a 70% market share, and

leverages its market power by steering patients to Accredo. FAC ¶¶ 2, 3, 18, 33, 50. While Accredo's specific market share in Louisiana is not publicly available, publicly disclosed Medicare Part D network files confirm that ESI is steering patients to Accredo at levels that support market power. *Id.* ¶¶ 11, 74. These allegations also support AHF's claim under the Louisiana Unfair Trade Practices statute.

AHF also properly states contract claims under Missouri law. ESI ignores an ambiguity in a key term, "Sponsor." Because "Sponsor" is subject to different interpretations, requiring a developed factual record to address the proper interpretation, ESI's motion must be denied.

Finally, AHF's claims are not barred by res judicata. AHF's suit against ESI in 2022 (the "2022 case") was based on different claims and could not have been brought against Accredo. Further, facts necessary to support AHF's current claims were unknown at the time or are new.

## AHF's FACTUAL ALLEGATIONS

Specialty pharmacies are state-licensed pharmacies that solely or largely provide medications for people living with serious health conditions requiring complex therapies. FAC ¶¶ 57-58. AHF operates a group of non-profit specialty pharmacies that primarily serves an under-represented population who desperately need access to specialty drugs in Louisiana. *Id.* ¶ 1. ESI is a PBM that controls access to more than 70% of individuals covered by health plans in Louisiana, including those who need specialty drugs. *Id.* ¶¶ 2, 50. ESI's subsidiary, Accredo, is a specialty pharmacy that competes with AHF and other specialty pharmacies in Louisiana and is licensed by Louisiana to sell specialty drugs. *Id.* ¶¶ 1, 26. Accredo serves patients in Louisiana though its mail-order service. *Id.* ¶ 59. AHF serves patients in Louisiana though its physical locations and its delivery and other services. *Id.* Specialty pharmacies in other states are not licensed to sell drugs in Louisiana, and Louisiana patients are unlikely to travel out-of-state to

purchase specialty drugs needed to treat long-term conditions like HIV and hepatitis C. *Id*.

ESI has engaged in an anticompetitive scheme to leverage its market power as a PBM to unilaterally impose arbitrary and capricious contract terms and fees on specialty pharmacies like AHF through various contract amendments from 2023 to present. *Id*. ¶¶ 3, 18, 30, 32, 36-43, 45-46. ESI imposes one-sided terms and obscures and distorts information needed to understand ESI's application of contractual formulas and reimbursement rates, and then reimburses pharmacies at rates so low as to often cause them to lose money on these essential and life-saving drugs. *Id*. ¶¶ 3, 28, 30. These low reimbursement rates paid to AHF and other specialty pharmacies drive ESI's excessive margins. *Id*. ¶28. Because ESI is the dominant PBM by far in Louisiana, specialty pharmacies have no choice but to accept ESI's terms. *Id*. ¶¶ 3, 31, 32.

ESI's market power in Louisiana also allows it to steer patients to Accredo. *Id*. ¶¶ 11, 26, 33, 74. Accredo's precise market share within Louisiana is not publicly available, but publicly available Medicare Part D network files suggest that ESI leverages its monopoly power to steer patients to Accredo at a higher rate than would be expected in a competitive market. *Id*. The Medicare Part D network files suggest that ESI incorporates Accredo for specialty pharmacy services in more than 50% of such plans in Louisiana. *Id*.

ESI's anticompetitive contract terms and steering of patients to Accredo unfairly prevents independent specialty pharmacies from being able to compete, long-term. *Id*. ¶ 4, 46, 50. AHF and other specialty pharmacies in Louisiana have been harmed by artificially low reimbursement rates, while ESI's affiliate, Accredo, benefits through higher reimbursement rates. *Id*. ¶¶ 34, 47, 101. Moreover, patients pay higher out-of-pocket costs, because ESI charges supra-competitive prices for specialty drugs dispensed from Accredo. *Id*. ¶¶ 28, 33, 47.

AHF also seeks damages for ESI's breach of contract and breach of the implied covenant

3

of good faith and fair dealing for commercial-health-insurance-backed transactions in 2021 and into 2022. *Id*. ¶7. Although AHF was generally aware ESI had lowered reimbursement rates, it was only this year that AHF learned ESI was purposefully misconstruing a key term of the ESI-AHF Agreement to deprive AHF of its entitled-to contractual reimbursement rate. *Id*.

## <u>ARGUMENT</u>

## I.    **The Doctrine of Res Judicata Does Not Apply to AHF's Claims**

In order for the Court to dismiss AHF's FAC on res judicata grounds, Defendants have the burden to show that all four elements of the analysis are met: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the persons for or against whom the claim is made. *LaBlance v. Dir. of Revenue*, 658 S.W.3d 505, 509 (Mo. 2022) ; *Lauber-Clayton, LLC v. Novus Props. Co*., 407 S.W.3d 612, 618 (Mo. Ct. App. 2013) . If any one element fails, the other elements need not be considered. *LaBlance,* 658 S.W.3d at 509 n. 6.

## A.    **The Lawsuits Do Not Arise from the Same Act, Contract or Transaction**

The first "identity" element, the thing sued for, considers the subject matter of the lawsuits and whether the remedies sought in each action are the same. *LaBlance,* 658 S.W.3d at 509. The second identity, the cause of action, requires that the two actions arise from the same facts and circumstances constituting the foundation of the claims. *State ex. rel. J.E. Dunn Constr. Co. v. Fairness in Constr. Bd.,* 960 S.W. 2d 507, 514 (Mo. Ct. App. 1998). For res judicata to apply, the operative facts must be the same as the previous lawsuit. *State at Rel. of Lewis v. Bd. of Zoning Adjustment, Platte Cnty., Mo.,* 688 S.W.3d 29, 48 (Mo. Ct. App. 2024).

Here the operative facts are completely different than in the 2022 case. There, AHF alleged that, beginning in 2016, ESI forced AHF into unconscionable contract provisions

pertaining to so-called "performance programs" governing *only Medicare Part D claims*, in violation of the contracts themselves, the covenant of good faith and fair dealing, and California law. *See* Ex. A (2022 FAC) ¶¶ 1, 22-25, 57-63, 65-72, 74-78, 83-98. The 2022 case alleged ESI exploited the "reasonably determined" exception created by the Center for Medicare and Medicaid Services ("CMS") in 2016, so that ESI could funnel Part D funds into its own coffers and the coffers of its plan-sponsor clients. *Id*.¶ 32. The prior action was aimed at practices CMS ended in 2024. *Id.* ¶¶ 42-44; FAC ¶¶ 36-37 (2024 changes). It sought damages relating to unlawful payments ESI clawed back from AHF. *See* Ex. A ¶54. Only ESI was named as a defendant—again, just as to Part D plans for payment adjustments after the point-of-sale. *Id* ¶ 23.

In the current, much different, lawsuit, AHF brings antitrust claims for attempted monopolization, monopoly leveraging, and restraint of trade in the specialty pharmacy market in Louisiana, for unfair trade practices under Louisiana state law for reimbursing AHF and other specialty pharmacies less than Accredo for the same services, and for breach of contract based on the misconstruction of the term "Sponsor" in the ESI-AHF Agreement.

All of the facts upon which these claims are based are either new, or were unknown to AHF in 2022, and could not have been known with reasonable diligence. Accordingly, res judicata does not apply. *Farrow v. Brown*, 873 S.W.2d 918, 920–21 (Mo. Ct. App. 1994) ("Res judicata extends 'only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred'") (quoting *Elam v. City of St. Ann*, 784 S.W.2d 330, 334 (Mo.App.1990)); *see also Lewis*, 688 S.W.3d at 49 (res judicata inapplicable to new ultimate facts); *Serafin v. Serafin*, 493 S.W.3d 897, 901 (Mo. Ct. App. 2016) (res judicata inapplicable to undiscovered facts).

Importantly, the allegations in the FAC are based in material part on the FTC Interim Report – released only in July of this year. From that FTC Interim Report, AHF determined that ESI was entering into similar contracts with other specialty pharmacies as a basis to restrain competition in order to steer customers to its own competing subsidiary, Accredo. FAC ¶¶ 25, 28, 34, 36, 37, 38, 43; *see Lewis,* 688 S.W. 3d at 49.

Further, to the extent that the antitrust claims are based on AHF and other specialty pharmacy's contracts with ESI, those claims are based on contract amendments entered into ***after the 2022 case***, new facts, and are not limited to contracts governing reimbursement on Medicare Part D claims. The allegations explicitly state that ESI's conduct changed as CMS barred ESI from retroactive reimbursement adjustments after the point of sale (the subject of the 2022 case). AHF bases its current allegations over bonus pool fees to new conduct occurring in 2024. FAC ¶¶ 30-32. Therefore, the actions cannot be based on the same act, contract or transaction as the 2022 case. *Est. of Talley v. Am. Legion Post 122*, 431 S.W.3d 544, 548 (Mo. Ct. App. 2014). Further, different facts will be necessary to prove the instant claims asserted by AHF. For example, AHF has to prove anticompetitive conduct within a relevant market and market power –issues not present in the first case. *Robinson v. Hooker*, 323 S.W. 3d 418, 425 (Mo. Ct. App. 2010) (res judicata inapplicable where different facts necessary to prove second lawsuit).

As to AHF's contract claims under Missouri law, those are based on commercial-health-insurance-backed (not Medicare Part D) transactions in 2021 and into 2022; AHF specifically alleges that it was unaware of the basis for the conduct until August 2024 – making res judicata inapplicable. FAC ¶7; *Serafin,* 493 S.W. 3d at 901.

The cases cited by Defendants are inapposite. In *Epice Corp. v. Land Reutilization Auth. of City of St. Louis*, 608 S.W.3d 725 (Mo. Ct. App. 2020), the two actions pled the same cause

of action with no new operative facts. In *Suppes v. Curators of Univ. of Mo.*, 613 S.W.3d 836 (Mo. Ct. App. 2020), the one "new" fact alleged was just an example of continuing conduct, whereas here the first lawsuit did not allege facts supporting steering, monopoly leveraging, or attempted monopolization. Similarly, in *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W. 3d 712, 716 (Mo. 2008), both claims required the same evidence which is not the case here. Finally, Defendants' two out-of-Circuit cases, *Cent. Garden & Pet Co v. Scotts Co.*, 85 F. App'x 633 (9th Cir. 2004), and *Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.*, 295 F.2d 362 (5th Cir. 1961), both involved plaintiffs who did not include new facts and asserted claims that arose entirely out of the same contractual agreements.

In analyzing the "identity of the thing sued for," courts also consider the remedies at issue in each lawsuit. *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 183 (Mo. Ct. App. 2002). Unlike the contract claims in the first action, the Sherman Act is remedial, provides for treble damages, and must be construed to give effect to its purpose. *See id.* (res judicata inapplicable where new federal claim provides remedies earlier tort claim did not). Because neither the thing sued for nor the causes of action are identical in the two cases, the doctrine of res judicata is not a bar.

## B.     The Third and Fourth "Identities" Elements Do Not Apply

The third "identity" element requires Defendants to show that there is an identity of parties to both actions. *Robinson,* 323 S.W.3d at 425. The fourth identity element requires Defendants to show that the "defendants are identical and sued in the same capacity in both suits." *Commonwealth Land Title Ins. Co. v. Miceli,* 480 S.W. 3d 354, 365 & n. 4 (Mo. Ct. App. 2015). Defendants admit that Accredo was not a party to the prior action but argue identicality anyway, because Accredo is a wholly-owned subsidiary of ESI. Mot. at 7. ESI is incorrect by the simple fact that Accredo has no rights or interest in the prior litigation. As stated by the Missouri

Supreme Court, "[p]rivity connotes those who are so connected with the party to the judgment as to have an identity of interest *that the party to the judgment represented the same legal right*." *Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. banc 1989) (emphasis added). Indeed, determining whether parties are in privity depends mostly on their relationship to the subject matter of the litigation. *Id*.; *see also Missouri Ins. Guar. Assn. v. Wal-Mart Stores, Inc*., 811 S.W.2d 28, 32 (Mo. Ct. App. 1991). Here, the first litigation involved ESI-AHF contracts that Accredo was neither a party nor a third-party beneficiary to. *See* 2022 FAC ¶¶ 1-3, 18-21. AHF could not have sued Accredo for the claims asserted in the 2022 case. *See e.g., Robinson,* 323 S.W.3d at 425 (no identity if plaintiff could not have sued defendant in first action). The question is not whether, in the prior action, Accredo would have sided with ESI by nature of its relationship. *Clements,* 765 S.W.2d at 591; *Wal-Mart,* 811 S.W.2d at 32.

Indeed, ESI's authorities support AHF. *See Daredevil, Inc. v. ZTE Corp.,* 1 F.4th 622, 628 (8th Cir. 2021) ("To be in privity . . . 'one must have an interest in the [earlier] action such that she will be bound by the final judgment as if she were a party.'") (citations omitted).  In *Daredevil*, both cases were similar, the complaints referred to conduct by both companies, described the two companies' actions as one, and both entities signed the contracts at issue. *Id*. at 628-30. None of those facts apply here.[1]

## II.    AHF Has Properly Alleged Claims That Satisfy the Federal Pleading Standard

### A.    AHF Has Properly Pled Its Antitrust Claims

Throughout its motion, Defendants grossly mischaracterize AHF's FAC.

Most notably, despite AHF pleading throughout the FAC that Defendants' antitrust scheme

---

[1]   The Restatement (Second) of Judgments § 59 cmt. e (Am. L. Inst. 1982) is inapplicable because it addresses closely held corporations. *See also* 18A Moore's Fed. Prac. & Proc. Juris. § 4460 (3d ed.) ("parent-subsidiary relationship does not of itself establish privity").

increases costs to AHF and other specialty pharmacies, as well as patients (FAC ¶¶ 22, 28, 33-34, 47-48, 50), Defendants contend that AHF seeks to increase prices to health plans and consumers. Defendants' reconstruction of the facts must be rejected: all allegations in the complaint must be accepted as true. *Braden v. Wal-Mart, Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009). There is no allegation—***none***—to support Defendants' assertion that AHF filed this lawsuit so that it can charge higher prices to patients. *See also* FAC ¶ 8 (AHF provides care for free to people without means). AHF filed this lawsuit to restore competition and continue its public-interest mission

### 1.    AHF Properly Alleges Antitrust Injury

The threshold inquiry for antitrust standing is whether the plaintiff has alleged "an antitrust injury . . . that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Schoenbaum v. E.I. Dupont De Nemours and Co.,* 517 F. Supp. 2d 1125, 1145 (E.D. Mo. 2007), *vacated in part,* 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *Gen. Indus. Corp. v. Hartz Mountain Corp.,* 810 F.2d 795, 809 (8th Cir. 1987). Importantly, "[t]here is a low threshold for antitrust injury at the pleading stage." *Toyota Motor Sales USA Inc. v. Allen Interchange LLC,* 2023 WL 5206884, at *4 (D. Minn. Aug. 14, 2023); *Fair Isaac Corp. v. Experian Info. Sols. Inc.,* 645 F. Supp. 2d 734, 748-49 (D. Minn. 2009).

Defendants again disingenuously claim that AHF alleges that AHF is forced to sell pharmaceutical drugs at lower prices than AHF would like. Mot. at 8. Instead, AHF alleges that Defendants' anticompetitive conduct—one-sided contracting practices and steering of its patients to its subsidiary Accredo—has injured AHF and other specialty pharmacies, as well as patients. FAC ¶¶ 18, 28, 50, 78. AHF alleges that this conduct is aimed at reducing reimbursement rates to

AHF and other specialty pharmacies to drive ESI's excessive margins (not to reduce prices for consumers) and push specialty pharmacies out of business in the long term. *Id.* AHF has estimated that it has lost substantial revenues due to Defendants' conduct. *Id.* ¶50. Further, AHF alleges that ESI's low reimbursement rates and steering to Accredo result in **higher prices** and that Louisiana patients have been harmed though less choice, higher prices, and, at least in some instances, lack of access to local brick-and-mortar pharmacies. *Id.* ¶¶ 22, 28, 33, 34, 47, 48, 50.

Courts consistently deny motions to dismiss where antitrust plaintiffs have pled antitrust injury with similar allegations. *See Toyota Motor Sales,* 2023 WL 5206884, at *4–*5 (antitrust injury pled where customers stopped buying Toyota parts from plaintiff and it risked being driven from market); *see also Inline Packaging, LLC v. Graphic Packaging Int'l,* 164 F. Supp. 3d 1117, 1136 (D. Minn. 2016) (antitrust injury pled where plaintiff alleged lost profits due to defendant's anticompetitive conduct); *Sitzer v. Nat'l Assn. of Realtors*, 420 F. Supp. 3d 903, 914 (W.D. Mo. 2019) (market harm raises fact issues).

As to Defendants' contention that AHF's claims resemble a "price squeeze," Defendants again are incorrect. While AHF alleges that ESI lowers reimbursement rates to AHF and other specialty pharmacies upstream (*see* FAC ¶¶ 28, 34, 38), it does **not** allege that ESI lowers prices in the downstream market in which Accredo competes to squeeze AHF and other specialty pharmacies. Instead, AHF alleges the opposite—ESI steers customers to Accredo in order to charge higher prices to consumers and monopolize the Louisiana specialty pharmacy market. *Id.* ¶¶ 11, 18, 28, 32, 48. AHF alleges that Defendants have embarked on a scheme to push specialty pharmacies out of the market over the long term. *Id.* ¶¶ 1, 28, 46, 50. This is not a case where Defendants are lowering prices to increase competition but instead a case where Defendants act to raise prices and harm patients. For these reasons, *Mahaska Bottling Co. v. PepsiCo Inc*., 271

10

F. Supp. 3d 1054, 1068 (S.D. Iowa 2017) and *Pac. Bell Tel. Co. v. Linkline Comms., Inc,* 555 U.S. 438, 449 (2009), are inapposite. Defendants' other cases are also distinguishable. *Niemann v. Carlsen,* 2023 WL 4198227, at *10-11 (E.D. Mo. June 27, 2023) and *The MSLonline.com, Inc. v. Reg'l Multiple Listing Serv. Of Minn., Inc.,* 840 F. Supp. 2d 1174, 1182 (D. Minn. 2012), involved harm to only one competitor. Here, AHF alleges harm to itself, other specialty pharmacies, and patients. *Craftsman Limousine, Inc. v. Ford Motor Co.,* 491 F.3d 380, 390 (8th Cir. 2007), is distinguishable because there the restrictions insulated the plaintiff from harm.

Lastly, AHF's claims are not similar to claims brought by others against PBMs that courts rejected. Allegations about low reimbursement rates in *Wholesale All., LLC v. ESI,* 366 F. Supp. 3d 1069, 1079-80 (E.D. Mo. 2019), involved an atypical tying claim and had nothing to do with antitrust injury. In *Trone Health Services, Inc. v. Express Scripts Holding Co.,* 2019 WL 1207866, at *5-6 (E.D. Mo. Mar. 14, 2019), plaintiff failed to allege harm to consumer welfare. Here, the FAC clearly outlines harm to patients. FAC ¶¶ 22, 28, 48, 50. Finally, *Physician Specialty Pharmacy, LLC v. Prime Therapeutics,* LLC, 2019 WL 1239705, at *6-8 (D. Minn. Jan. 24, 2019) is inapplicable—AHF alleges harm to other specialty pharmacies and consumers, higher prices, and plausibly alleges that Accredo has market power.

### B.    AHF Has Alleged a Plausible Relevant Market

Dismissal for failure to plausibly plead the relevant market should be granted "sparingly and with caution" as "proper market definition . . . can be determined only after a factual inquiry into the 'commercial realities' faced by consumers." *Eastman Kodak Co. v. Image Tech. Serv., Inc.,* 504 U.S. 451, 482 (1992); *accord Double D Spotting Service, Inc. v. Supervalu, Inc.,* 136 F.3d 554, 560 (8th Cir. 1998); *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.,* 637 F.3d 435,442 (4th Cir. 2011); *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001) (courts

hesitate to grant motions to dismiss as "market definition is a deeply fact-intensive inquiry"). "The types of pleadings that fail to allege a plausible relevant product market generally fail because the pleading . . . attempts to limit the relevant market with respect to 'a single brand, franchise, institution, or comparable entity that competes with potential substitutes' . . . ." *Toyota Motor Sales,* 2023 WL 52086884, at *4 (citing *Mahaska Bottling Co.*, 271 F. Supp. 3d at 1075). In addressing market allegations, all reasonable inferences must be drawn in plaintiff's favor. *Willis Elec. Co., Ltd. v. Polygroup Macau Ltd.,* 437 F. Supp. 3d 693, 710 (D. Minn. 2020).

Defendants attack only AHF's definition of the Louisiana specialty pharmacy market (with no challenge to the Louisiana PBM covered-lives market), claiming it is overinclusive in that it includes both mail-order and brick-and-mortar pharmacies, and is also underinclusive in that it is limited to the State of Louisiana. Mot. at 12. Defendants' arguments, while wrong, raise quintessential fact issues not resolvable on a motion to dismiss. *Todd,* 275 F.3d at 199-200.

### 1.     The Louisiana Specialty Pharmacy Market Is Plausible.

The FAC alleges that the specialty pharmacy market includes both mail-order and brick-and-mortar specialty pharmacies because both must be licensed by the State of Louisiana to provide services, and both handle high-cost drugs for serious conditions. FAC ¶¶ 57, 58. Based on these well-pled allegations, AHF's market definition is more than plausible. Indeed, these are the types of facts that the Court said were missing in *Physician Specialty Pharmacy,* 2019 WL 1239705, at *5, cited by Defendants. There, the court stated that "[t]he outer boundaries of a product market must be determined by examining whether consumers would shift from one service to another in response to a change in the cost of the original service." *Id.* The court noted that plaintiff failed to allege facts that showed it was plausible for a patient seeking mail-order pharmacy services to obtain the same services from a specialty pharmacy and vice versa.

Here, AHF alleges (1) that specialty pharmacies in Louisiana, including AHF and Accredo, compete to provide specialty drugs to patients located throughout Louisiana; (2) Accredo accomplishes this through its mail-order service; and (3) AHF accomplishes this through its locations in Louisiana and by using delivery and other services. FAC ¶¶ 57-59. Thus, unlike in *Physician Specialty Pharmacy,* AHF is not simply a storefront; it offers delivery services that compete with Accredo throughout the state. Accordingly, these services are substitutes and properly in the same relevant market. Moreover, AHF alleges that ESI is steering patients away from other specialty pharmacies in Louisiana to Accredo, demonstrating the services are interchangeable. *Id*. ¶¶ 11, 33, 74. *See also Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.,* 2006 WL 1851137, at *6 (D. Minn. June 30, 2006) (market definition plausible).[2]

### 2.    AHF's Geographic Market Is Plausible

AHF alleges that the geographic scope of the specialty pharmacy market is the State of Louisiana because specialty pharmacy competitors, like AHF and Accredo, provide drugs to patients located throughout the state. FAC ¶59. Accredo does this through its mail-order service and is licensed in Louisiana. *Id*. AHF does this through physical locations and distributes specialty drugs throughout the state using delivery and other services. *Id*. AHF explains that specialty pharmacies in other states are not reasonable substitutes because they are not licensed in Louisiana, and Louisiana patients are unlikely to travel out-of-state to purchase specialty drugs for long-term conditions like HIV and hepatitis C. *Id*.

---

[2]  Defendants generally cite *Park Irmat Drug Corp. v. Express Scripts Holdings Co*., 911 F.3d 505, 517 (8th Cir. 2018). But there, the plaintiff limited the product market to only ESI's mail-order pharmacy, without considering other mail-order pharmacy services. AHF's relevant market includes all Louisiana specialty pharmacies, whether brick-and-mortar or mail-order. *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 598 (8th Cir. 2009), is also distinguishable where plaintiff limited the market to patients with private insurance.

Courts define the relevant geographic market as "the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition." *Inline Packaging, LLC,* 164 F. Supp. 3d at 1126 (citing *Morgenstern v. Wilson,* 29 F.3d 1291, 1296 (8th Cir. 1994)). Here, the FAC alleges facts supporting a plausible conclusion that the relevant geographic market is statewide because both AHF and Accredo can and do distribute specialty pharmacy drugs statewide, both must be licensed in Louisiana to do so, and patients are unlikely to travel out of state to purchase specialty drugs. *See ABA Antitrust Law Developments* at 640 & n. 318 (9th ed.) (geographic market can be individual state).

The allegations in *Physician Specialty Pharmacy* are distinguishable. There, the plaintiff stated that patients "rarely leave their locality to obtain prescription medications." 2019 WL 1239705, at *5. Thus, the court concluded, by plaintiff's own reasoning, a patient would not travel across the state to obtain pharmacy services. *Id*. Here, AHF alleges that Accredo, as a mail-order specialty pharmacy, can distribute drugs across Louisiana and that AHF similarly distributes drugs state-wide through its multiple locations and by delivery and other services. FAC ¶ 59. Moreover, the FAC addresses why a Louisiana patient would not drive into Texas to receive its prescriptions: (1) an out-of-state pharmacy is not licensed by the State of Louisiana and (2) in practice patients do not travel across state lines to obtain specialty drugs needed to treat long-term conditions like HIV and hepatitis C.[3] *Id*.; *see also* DOJ-FTC *Merger Guidelines,* §4.3D.2 (2023) (factors that may limit geographic scope of market include regulation). In short, AHF has properly pled a plausible geographic market.[4]

---

[3]   Defendants' Texas hypothetical does not consider that specialty drug patients cannot go to Walgreens; patients must seek out a specialty pharmacy covered by their Louisiana health plan.
[4]   *Little Rock Cardiology Clinic*, 591 F.3d at 598 is distinguishable; plaintiffs alleged competitors serve patients statewide but limited the market to areas around Little Rock.

### C.    AHF Has Plausibly Alleged That Accredo Has Market Power

In challenging market power, Defendants spend little time addressing AHF's allegations under Section 1 of the Sherman Act. Undoubtedly this is because the market share required to prove a Section 1 violation is fact-specific, typically between 30% and 50%, and sometimes lower.[5] *See 3M v. Appleton Papers, Inc.,* 35 F. Supp. 2d 1138, 1143 (D. Minn. 1999) ("Generally speaking, a foreclosure rate of at least 30 percent to 40 percent must be found to support a violation of the antitrust laws"); *Toys-R-Us, Inc. v. FTC*, 221 F.3d 928, 937 (7th Cir. 2000) (20% national share sufficient to show market power); *see NCAA v. Alston*, 594 U.S. 69, 88 (2021) (market power is "fact-specific assessment") (citation omitted). Here, the FAC alleges ESI's market share of 70% and facts supporting that Accredo's market share is significantly higher than its national share of 24% thus satisfying the required plausibility under Section 1.

Defendants' challenge to AHF's Section 2 claims fares no better. To plead an attempted monopolization claim, a plaintiff must allege: (1) a specific intent by the defendant to control prices and destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplish the unlawful purpose; and (3) a dangerous probability of success.[6] *Willis Elec.,* 437 F. Supp. 3d at 707-09 (citing *Gen. Indus. Corp.,* 810 F.2d 795 at 801). Defendants challenge AHF's allegations with respect to only "a dangerous probability of success." But Defendants' arguments fail because AHF has alleged market power through Defendants' control over prices and ability to exclude competitors. *Minn. Made Hockey,* 789 F. Supp. 2d at 1146. Further, AHF has alleged Accredo has a dominant share of the market.

---

[5]  Defendants' cases are in accord. *In re EpiPen Direct Purchaser Litig.,* 2022 WL 1017770, at *8 (D. Minn. Apr. 5, 2022) (40% is the threshold); *Se. Mo. Hosp. v. C.R. Bard, Inc.,* 2008 WL 199567, at *6-7 (E.D. Mo. Jan. 22, 2008) ("[T]here is no set percentage" for foreclosure).
[6]  Monopoly leveraging has been recognized within this district post-*Trinko. See ASI Industries GMBH v. MEMC Electronic Materials, Inc*., 2006 WL 8458683, at *6 (E.D. Mo. Nov. 1, 2006).

First, AHF has properly alleged that Accredo has achieved a dominant market share in the Louisiana specialty market; it is not required to plead a specific market share number. *Foam Supplies, Inc. v. The Dow Chem. Co.,* 2006 WL 2225392, at *6-7 (E.D. Mo. Aug. 2, 2006) (market share alone not dispositive and courts consider other factors including existence of barriers to entry and nature of anticompetitive conduct); *IQVIA Inc. v. Veeva Sys. Inc.*, 2018 WL 4815547, at *3 (D.N.J. Oct. 3, 2018) ("plaintiff need not identify a defendant's specific market share"). *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 318-19 (3d Cir. 2007) (same).

Here, AHF alleges that ESI engaged in an anticompetitive scheme to leverage its market power as a PBM by unilaterally imposing arbitrary and capricious contract terms and fees on specialty pharmacies like AHF (and by extension their patients) in order to obfuscate information needed to understand ESI's application of contractual formulas and reimbursement rates, which allowed ESI to impose reimbursement rates so low as to cause AHF to lose money on essential and life-saving drugs. FAC ¶¶ 3, 28-48, 51, 75. The intended result is to prevent independent specialty pharmacies from being able to compete long-term while also steering patients to Accredo. *Id*. ¶¶ 4, 33, 47, 50, 74-75. These allegations amply demonstrate the restraint on trade and threat to competition. AHF further details significant barriers to entry. *Id*. ¶¶ 55, 74.

Courts consistently deny motions to dismiss with similar allegations of a dangerous probability of success.  *See e.g. Fair Isaac Corp*., 2008 WL 623120, at *8 (defendants control credit data necessary to generate credit scores and pricing of credit score sales); *Foam Supplies, Inc.,* 2006 WL 2225392, at *6-7 (market power by virtue of manufacturing capacity, sales volume, leadership in setting prices, and other factors); *Minn. Made Hockey,* 789 F. Supp. 2d at 1146-47 (withdrawal of players from plaintiff's leagues because of alleged anticompetitive rule); *Best Pallets Inc. v. Brambles Indus., Inc.,* 2008 WL 3539627, at 2 (W.D. Ark. Aug. 11, 2008)

(defendant largest producer, customer base was increasing, and shifting costs to pallet recyclers).

Second, where market share data is available (it is not publicly available here) a foreclosure rate of 40% to 50% can be sufficient for attempted monopolization. *Rebel Oil, Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1438 (9th Cir. 1995) (attempted monopolization requires a lower quantum than monopolization; 44% sufficient); *Hewlett-Packard Co. v. Boston Sci. Corp.,* 77 F. Supp.2d 189, 198 (D. Mass. 1999); *L&W/Lindco Prods., Inc. v. Pure Asphalt Co.,* 979 F. Supp. 632, 637 (E.D. Ill. 1997); *Virgin Atl. Airways Ltd. v. British Airways PLC,* 872 F. Supp. 52, 63-64 (S.D.N.Y. 1994).[7] AHF alleges that Accredo's market share in Louisiana is significantly higher than its national market share of 24%. FAC ¶ 74. Supporting this allegation, AHF alleges ESI is the dominant PBM in the state with more than a 70% market share. *Id*. And, while Accredo's market share in Louisiana is not publicly available, accessible Medicare Part D network files show that ESI is leveraging its monopoly power by steering patients to Accredo at a significantly higher rate than would be expected in a competitive market. *Id*. That data shows that Accredo is used for specialty pharmacy services in more than 50% of plans in Louisiana— supporting an inference of significant market power. *Id.*

Defendants' assertion that these allegations are conclusory is wrong as evidenced by AHF's specific facts. *Id.* ¶¶ 11, 74. Further, Defendants cited cases are inapposite. *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, contained no similar factual detail. 753 F. Supp. 2d 912, 928 (E.D. Mo. 2010) . *See also Niemann*, 2023 WL 4198227, at *13 (same).

---

[7]  Defendants' cases are in accord—*In re EpiPen Direct Purchaser Litig.,* 2022 WL 1017770, at *8 (D. Minn. Apr. 5, 2022) (40% is the threshold); *Mahaska*, 271 F. Supp. 3d at 1076 (standard low for pleading attempted monopolization). Defendants' other cases are inapposite because they involve monopolization – which requires a higher *threshold. See Morgenstern*, 29 F.3d at 1296, n.3; *Se. Mo. Hosp. v. C.R. Bard, Inc.,* 2008 WL 199567, at *6-7 (E.D. Mo. Jan. 22, 2008); *Foam Supplies, Inc. v. The Dow Chem. Co.,* 2007 WL 4210354, at *5 (E.D. Mo. Nov. 27, 2007); *FTC v. Tenet Health Care Corp.,* 186 F.3d 1045, 1052 n.10 (8th Cir. 1999) (Section 7 case).

### III.    AHF's Contract Claims Are Well Pled

### A.    The Term "Sponsor" Was Not Intended to Include a PBM

ESI contends that AHF's contract claims are subject to dismissal because the term "Sponsor" is "clear and unambiguous," incorporating not just a health-plan sponsor but a PBM. ESI is wrong. Indeed, ESI ignores allegations that analyze the contract as a whole and explain the intentions of the parties–to have AHF provide pharmacy goods and services to patients with health insurance–not to provide those goods and services to PBMs. Missouri law is clear that each term of the Agreement must be construed to avoid rendering other terms and provisions meaningless. *Affordable Cmtys. of Mo. v. Fed. Nat'l Mtg. Assn.,* 714 F.3d 1069, 1075-76 (8th Cir. 2013); *Zeiser v. Tajkarimi,* 184 S.W.3d 128, 133 (Mo. Ct. App. 2006). Further, under Missouri law, "[l]anguage is ambiguous if it is reasonably open to different constructions." *Freedom Smokeless, Inc. v. Rapid Dev. Servs., Inc.,* 2015 WL 5735201, at *5 (E.D. Mo. Sept. 29, 2015) (*citing Burns v. Smith*, 303 S.W. 3d 505, 509 (Mo. banc 2010)).

As noted above, the FAC alleges the purpose of the ESI-AHF Agreement was to allow AHF to provide prescription drugs to the millions of patients *whose health plans use ESI* as a PBM. FAC ¶60 (emphasis added). It quotes from the Agreement that definitions such as "Sponsor," "shall have the meaning set forth herein, ***except where the context makes it clear that such meaning is not intended***." *Id.* ¶ 61 (emphasis added); ECF No. 38-2 ¶1. The FAC also alleges that "[i]n the industry, 'sponsor' refers to a health plan that serves its members," *i.e.*, patients, and does not refer to a PBM. FAC ¶ 62. Further, the FAC alleges that a PBM does not have members and the Agreement's provisions support that a "sponsor" has members. *Id*. For example, Section 1.3 of the Agreement defines "Member(s)" as "a subscriber and his or her eligible dependents to which benefits are available pursuant to a Prescription Drug Program." *Id*.

And, Section 7.1 provides that AHF agrees 'that it shall not . . . engage in any contact or outreach to any Sponsor and/or Sponsor's Member." *Id*. Thus, interpreting "sponsor" to include a PBM with no members makes no sense and renders these provisions meaningless. *Id*.; *see also* ¶ 67. At best, Defendants suggest ambiguity in the term "sponsor" requiring factual development.

The facts here are similar to *Affordable Cmtsy. of Mo.*, where the Eighth Circuit concluded that the agreement was ambiguous, and remanded for further proceedings. 714 F.3d at 1075-76; *see also Robinson Mech. Contr. Inc. v. PTC Grp.,* 2017 WL 2377509, at *4-5 (E.D. Mo. June 1, 2017); *Zeiser,* 184 S.W.3d at 132-33.[8] Because ESI raises factual issues as to the AHF-ESI agreement, the motion to dismiss must be denied.

### B.    Breach of the Implied Covenant of Good Faith and Fair Dealing Is Well Pled

Because AHF has plausibly alleged a breach of contract, ESI's argument that the implied covenant claim fails is without merit. *See Robinson Mech. Grp.,* 2017 WL 2377509, at *8. Here, AHF alleges ESI engaged "in a scheme to deprive AHF of its rightful reimbursement rates" by "purposefully misclassifying Prime as a 'Sponsor,' when ESI knew full well that a PBM like Prime is not a 'Sponsor' as intended under the Agreement." FAC ¶ 68. AHF further alleges ESI has evaded the spirit of the bargain, entered into the arrangement with Prime without AHF's consent, and is purposefully depriving AHF of entitled reimbursements*. Id.* ¶¶ 63-66, 69, 111-16. These allegations sufficiently state a claim. *Robinson Mech Grp.,* 2017 WL 2377509, at *8.[9]

---

[8] ESI's other cited cases are distinguishable. *See J.S. DeWeese Co. v. Hughes-Treitler Mfg. Corp.,* 881 S.W.2d 638, 644 (Mo. Ct. App. 1994) (no support for ambiguity); *Arbors at Sugar Creek Homeowners Assn. v. Jefferson Bank & Tr. Co.,* 464 S.W.3d 177, 183 (Mo. 2015) (no alleged ambiguity); *AHF v. ESI.,* 658 F. Supp. 3d 693, 702 (E.D. Mo. 2023) (same). Further, *JS. DeWeese* and *Arbors* were not decided on a motion to dismiss.

[9]  Defendants' cases are inapposite because, unlike here, the contracts were not alleged to have ambiguous terms. *AHF v. ESI,* 658 F. Supp. 3d 693, 703 (E.D. Mo. 2023), *CitiMortgage, Inc. v. Chicago Bancorp, Inc.,* 808 F.3d 747, 751 (8th Cir. 2015); *Siebert v. Peoples Bank,* 632 S.W.3d

### C.    AHF Has Alleged a Claim Under the LUTPA

AHF alleges ESI's conduct offends established public policy as set forth in the Louisiana Unfair Trade Practices Act ("LUTPA"). ESI does not challenge that conduct supporting AHF's antitrust claims may constitute violations of LUTPA. Instead, ESI agues AHF fails to allege violations under Louisiana's Insurance Code, R.S. 22:1860.3(A). ESI is wrong.[10]

ESI argues the FAC is deficient by not alleging ESI paid AHF less than Accredo for the same services "on a per-unit basis using the same generic product identifier or code number." Mot. at 20. ESI does not cite any Louisiana law requiring these magic words, but instead cites the federal pleading standard in *Iqbal*, 556 U.S. 662, 678 (2009) . But AHF's allegations specifically refer to information in the FTC Interim Report and elsewhere that ESI is reimbursing Accredo at higher rates than other specialty pharmacies. FAC ¶¶ 34, 47, 101. AHF also alleges reimbursement below its costs, further supporting it is reimbursed less than Accredo. *Id.* ¶ 3. At the pleading stage, AHF is not required to plead the per-unit basis and generic codes, especially when that detailed information is in Defendants' hands and not known to AHF. *Braden,* 588 F.3d at 595; *Whitney v. The Guys, Inc.,* 700 F.3d 1118, 1129 (8th Cir. 2012).

### <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' motion to dismiss should be denied, or alternatively, AHF should be given leave to amend any deficiencies.

---

461, 469 (Mo. Ct. App. 2021). *Reliance Bank v. Paramont Props., LLC,* 425 S.W.3d 202, 208 (Mo. Ct. App. 2014) is also inapplicable because here the allegations support ESI's bad-faith.
[10]   Louisiana's Insurance Code, R.S. 22:1860.3(A)   provides a PBM: "shall not reimburse a pharmacy… in [Louisiana] an amount less that the amount…[PBM] reimburses an affiliate of the [PBM] for providing the same services." Violations are enforceable under LUTPA. R.S. 22:1860.3(C) . The statute provides that the "amount shall be calculated on a per-unit basis using the same generic product identifier or generic code number." R.S. 22:1860.3(A) .

Dated: November 27, 2024                    Respectfully submitted,


                                            By: /s/Brian E. McGovern

                                            McCARTHY, LEONARD & KAEMMERER, L.C.
                                            Brian E. McGovern, SBN 34677 (MO)
                                            *bmcgovern@mlklaw.com*
                                            Andrew M. Lammert, SBN 60206 (MO)
                                            *alammert@mlklaw.com*
                                            825 Maryville Centre Drive, Suite 300
                                            Town and Country, MO  63017-5946
                                            Telephone:     314-392-5200


                                            KESSELMAN BRANTLY STOCKINGER LLP
                                            David W. Kesselman, *Pro Hac Vice*
                                            *dkesselman@kbslaw.com*
                                            Amy T. Brantly, *Pro Hac Vice*
                                            *abrantly@kbslaw.com*
                                            Abiel Garcia, *Pro Hac Vice*
                                            *agarcia@kbslaw.com*
                                            Wesley A. Sweger, *Pro Hac Vice*
                                            *wsweger@kbslaw.com*
                                            1230 Rosecrans Avenue, Suite 400
                                            Manhattan Beach, CA 90266
                                            Telephone:     310-307-4555

                                            *Attorneys for Plaintiff*
                                            AIDS HEALTHCARE FOUNDATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on 27th day of November, 2024, a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

/s/ Brian E. McGovern