**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPRESS SCRIPTS, INC. and ACCREDO HEALTH GROUP, INC.<br><br>*Defendants.* | No. 4:24-cv-1043-MAL |

## MEMORANDUM AND ORDER

Before the Court is Defendant Express Scripts, Inc. and Defendant Accredo Health Group, Inc.'s motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff AIDS Healthcare Foundation's First Amended Complaint. (Doc. 35).

In this action, Plaintiff AIDS Healthcare Foundation (the "Foundation") sues Defendants Express Scripts, Inc. and Accredo Health Group, Inc. for alleged antitrust violations under federal law, for unfair trade practices under state law, and for breach of contract. (Doc. 1). But the Foundation already had its chance to bring these claims in its prior recent suit against Express Scripts, *AIDS Healthcare Foundation v. Express Scripts, Inc.*, 658 F. Supp. 3d 693 (dismissed on February 23, 2023). The Foundation is barred by the doctrine of claim preclusion from bringing them now. Therefore, the Court **GRANTS** the motion to dismiss.

### I. Background[1]

AIDS Healthcare Foundation owns and operates a chain of specialty pharmacies. (Doc. 29 ¶ 1). Express Scripts Inc. ("Express Scripts") is a pharmacy

[1] On a motion to dismiss, the Court accepts the factual allegations in a complaint as true, even if it appears that "actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

benefit manager that manages pharmaceutical benefits for health plans. (*Id.* ¶¶ 1, 53). Pharmacy benefit managers create networks that connect pharmacies and health plans, manage the prescription drug benefits set by a patient's health plan, and facilitate payments for prescription drugs between health plans and pharmacies (reimbursements). (*Id.* ¶¶ 23, 53). Large pharmacy benefit managers that have more health plan clients and covered patients (members) can negotiate lower reimbursement rates, lowering their members' prescription drug costs. *See* (*Id.* ¶¶ 20, 28).

Express Scripts—one of the three largest pharmacy benefit managers in the United States—negotiates "low reimbursements rates" from pharmacies on behalf of its health plan clients. (*Id.* ¶¶ 21, 28, 72). Pharmacies that participate in Express Scripts's pharmacy networks must enter into a Pharmacy Provider Agreement with Express Scripts. (*Id.* ¶ 29). Over 67,000 retail pharmacies across America participate in Express Scripts' pharmacy networks, including the Foundation. (*Id.* ¶¶ 9).

Express Scripts reimbursed the Foundation under the terms of the 2017 Pharmacy Provider Agreement and its subsequent amendments. (*Id.* ¶¶ 29–32). These agreements include performance-based incentives measured according to quality metrics set by the Centers for Medicare & Medicaid Services, which provide that high performing pharmacies earn more, and low performing pharmacies earn less. (*Id.* ¶¶ 38–40).

Before filing a complaint against Express Scripts in ***this*** case, the Foundation filed a different complaint against Express Scripts in a ***prior*** case. That prior complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, "unenforceable unconscionable contracts," and unfair trade practices claims under state law. *See* Complaint for Damages & Injunctive Relief, *AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693 (E.D. Mo. 2023) (No. 4:22-cv-743-AGF), Doc. 1. The Foundation then amended that complaint, claiming that Express Scripts used its bargaining leverage to impose one-sided, opaque contract terms in the 2017 Pharmacy Provider Agreement and later amendments, including performance-based incentives which allegedly resulted in low

reimbursement rates. *See* First Amended Complaint for Damages & Injunctive Relief at ¶¶ 19–21, 25, 28, 30, 45–47, *AIDS Healthcare Found.*, 658 F. Supp. 3d 693 (No. 4:22-cv-743-AGF), Doc. 23 [hereinafter "2022 Complaint"]; *see also AIDS Healthcare Found.*, 658 F. Supp. 3d at 698–701 (explaining the initial 2017 contract and subsequent amendments). That case was dismissed for failure to state a plausible claim for relief. *Id.* at 697. Now the Foundation has sued Express Scripts again, alleging federal antitrust claims as well as state unfair trade practices, breach of contract, and breach of the implied covenant of good faith and fair dealing claims. (Doc. 29 at 38–53).

## II. Legal Standard

Express Scripts moves to dismiss the Foundation's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6)—failure to state a claim upon which relief can be granted. (Doc. 35). To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). A complaint does not state a claim upon which relief can be granted if, on its face, it is claim precluded. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763 (8th Cir. 2012) (claim preclusion can provide the basis for dismissal under Fed. R. Civ. P. 12(b)(6)); *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (reciting standard of review on a motion to dismiss for failure to state a claim based on claim preclusion.).

## III. Analysis

Express Scripts moves this Court to dismiss the Foundation's suit based on claim preclusion, or, in the alternative, for failure to state a claim. (Doc. 36 at 9–12, 12–25). The Court starts (and ends) with claim preclusion. Because this action violates Missouri's prohibition on claim splitting, it is precluded. The Foundation's complaint will be dismissed.

### A. Missouri's claim preclusion doctrine applies

Because the Foundation's prior action against Express Scripts was a diversity suit, *AIDS Healthcare Found.*, 658 F. Supp. 3d 693, 701 (E.D. Mo. 2023) ("[the Foundation] filed suit against Express Scripts … invoking the Court's diversity

jurisdiction"), Missouri law governs the claim preclusion analysis. "[W]hen a federal court, exercising diversity jurisdiction, renders the first judgment, … that federal diversity judgment" must be given "the same claim-preclusive effect that the forum's state courts would give to a state court judgment." *Daredevil, Inc. v. ZTE Corp.*, 1 F.4th 622, 627 (8th Cir. 2021) (quotation and citation omitted). Thus, because the prior judgment at issue here was a federal diversity judgment rendered by this Court in Missouri, *see generally AIDS Healthcare Found.*, 658 F. Supp. 3d 693 (No. 4:22-cv-743-AGF), Missouri law determines the prior judgment's claim-preclusive effect. *Daredevil*, 1 F.4th at 627.

**B. This Action is precluded because it constitutes improper claim splitting.**

As part of its claim preclusion doctrine, Missouri prohibits claim splitting. "Improper splitting of claims occurs when a party sues on a claim which arises out of the same 'act, contract or transaction' as the previously litigated claims." *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 716 (Mo. 2008) (quoting *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. 1991)); *see also Evanston Ins. Co. v. Nooter, LLC*, 129 F.4th 494, 497 (8th Cir. 2025) (same, citing *Kesterson*). If a claim "arises out of the same 'act, contract or transaction,'" the claim is barred by the original judgment under Missouri's doctrine of claim preclusion. *Kesterson*, 242 S.W.3d at 716 (citing *Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315, 319 (Mo. 2002)). This prohibition "serves to prevent a multiplicity of suits and appeals with respect to a single cause of action, and is designed to protect defendants against fragmented litigation, which is vexatious and costly." *Id.* (quotation and citation omitted).

**1. The Foundation's claims arise from the same act, contract, or transaction.**

To determine if claims are precluded because they violate the rule against claim splitting, *i.e.*, because they arise from the same "act, contract or transaction," "a court looks to the factual bases for the claims, not the legal theories." *Chesterfield Village*, 64 S.W.3d at 319. "Transaction" has a broad meaning, including "the

aggregate of all the circumstances which constitute the foundation for a claim" and "all of the facts and circumstances out of which an injury arose." *King General Contractors, Inc.*, 821 S.W.2d at 501 (citation omitted). Thus, when a judgment is rendered on a claim, it extinguishes "all rights of the plaintiff to ***remedies*** against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Chesterfield Village*, 64 S.W.3d at 319 (emphasis in original).

Here, the Foundation's claims are precluded because they arise from the same facts and circumstances as its claims in its prior case against Express Scripts. The Foundation's claims in both cases arise from the same contract—the parties' 2017 Pharmacy Provider Agreement. *Compare AIDS Healthcare Found.*, 658 F. Supp. 3d at 698–99 *with* (Doc. 29 ¶¶ 29, 31). The crux of both cases is the Foundation's allegations that (1) Express Scripts has bargaining power,[2] (2) Express Scripts uses this bargaining power to impose on the Foundation one-sided, arbitrary, and opaque contractual terms (like performance incentives),[3] and (3) these terms result in the Foundation being reimbursed at lower rates.[4] And both cases seek the same remedies: an injunction prohibiting Express Scripts from enforcing the terms of the 2017 Pharmacy Provider Agreement and subsequent amendments, as well as damages stemming from pre-2023 reimbursement rates. *Compare AIDS Healthcare Found.*, 658 F. Supp. 3d at 701, *with* (Doc. 29 at 53). Given these circumstances, this action is based on the same facts and circumstances as the previous case, *i.e.,* the same "act, contract or transaction." *See King General Contractors*, 821 S.W.2d at 501 (Mo. 1991) (recognizing "transaction" includes "all of the facts and circumstances out of which an injury arose."). And because the prior case "extinguished … all rights of [the Foundation] to remedies against [Express Scripts] with respect" to these facts and circumstances, *Chesterfield Village*, 64 S.W.3d at 319, this action is claim precluded.

[2] *Compare* (Doc. 29 ¶¶ 28–29, 31) *with* 2022 Complaint at ¶¶ 19–21.
[3] *Compare* (Doc. 29 ¶¶ 28–31, 36–40, 67) *with* 2022 Complaint at ¶¶ 21, 46, 47.
[4] *Compare* (Doc. 29 ¶¶ 3, 28, 31–32, 50, 66–67) *with* 2022 Complaint at ¶¶ 21–22, 24, 47, 53.

### 2. The Foundation's counterarguments are unpersuasive.

The Foundation argues its claims are not precluded because: (1) the claims in this case involve "completely different" operative facts, (Doc. 41 at 12–13); (2) are based on new facts, (*id.* at 13–14); and (3) involve a co-defendant that was not a party to the previous litigation, (*id.* at 15–16). These arguments are unpersuasive.

***First,*** the Foundation argues the operative facts in the two cases are "completely different." (*Id.* at 12). According to the Foundation, the previous case alleged that Express Scripts forced the Foundation into unfair contract provisions pertaining to performance programs governing a certain category of reimbursements, while this case brings claims for certain antitrust violations, for being reimbursed at a lower rate than another specialty pharmacy for the same services, and for the misconstruction of the term "Sponsor" in the parties' agreement. (*Id.* at 12–13).

But these distinctions merely highlight the Foundation's new legal theories and evidentiary details. The basic operative facts are the same. This case turns on one central allegation: Express Scripts allegedly "engaged in an anticompetitive scheme to leverage its market power as a [pharmacy benefits manager] to unilaterally impose arbitrary and capricious contract terms" on the Foundation, (Doc. 29 ¶ 3), with those "arbitrary and capricious contract terms" being the "low reimbursement rates" of the 2017 Pharmacy Provider Agreement. (*Id.* at ¶¶ 28–29, 31–32, 40–41). And that is the same central allegation asserted in Foundation's prior case too. *See AIDS Healthcare Found.*, 658 F. Supp. at 700 ("According to [the Foundation], because of Express Scripts' considerable bargaining leverage as one of the nation's largest [pharmacy benefits managers], Express Scripts was able to impose … lower pharmacy reimbursement rates [on the Foundation].").

The Foundation cannot relitigate those same operative facts as different claims now. "Separate legal theories are not to be considered as separate claims, even if the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *King Gen. Contractors, Inc.*, 821 S.W.2d at 501 (quotation and citation omitted).

***Second,*** the Foundation argues its claims in this case are not precluded because they are based entirely on new or previously unknown facts. (Doc. 41 at 13). True, new facts can constitute new claims. *Chesterfield*, 64 S.W.3d at 319–20. But "for a subsequent claim on the same transaction to be considered separate, … there must be new ***ultimate facts***, as opposed to evidentiary details, that form a new claim for relief." *Kesterson*, 242 S.W.3d at 716 (emphasis added). Here, the Foundation fails to show that its claims are based on new "ultimate facts," as opposed to simply new evidentiary details.

Most of the Foundation's alleged "new facts" come from a 2024 Federal Trade Commission report. (Doc. 41 at 14). From that report, the Foundation says it determined that Express Scripts was entering into anticompetitive contracts with other specialty pharmacies similar to the 2017 Pharmacy Agreement. (*Id.*). This is not new information. The Foundation was already on notice that not only Express Scripts but other pharmacy benefit managers engaged in this conduct on an "industry-wide" scale and that the FTC had begun investigating them for it—the Foundation alleged this in their 2022 case. *See* 2022 Complaint at ¶¶ 23–25; *AIDS Healthcare Found.*, 658 F. Supp. 3d at 698.

The Foundation also argues that its antitrust claims are new because they are based on new conduct by Express Scripts arising from amendments to the 2017 Pharmacy Provider Agreement that the Foundation entered into only after resolution of the prior case, which was dismissed on February 28, 2023. (Doc. 41 at 14). Not so. In its operative complaint in this case, the Foundation identifies only two contractual amendments after dismissal of the prior case that give rise to its claims: amendments on October 20, 2023, and January 1, 2023. (Doc. 29 ¶¶ 30–32). But the Foundation does not allege any specific harm attributable to these two amendments. Instead, the "new" conduct that the Foundation challenges is, at most, further example of the same alleged anticompetitive conduct under the 2017 Pharmacy Provider Agreement.

In this case, the Foundation alleges that it:

> entered into a Pharmacy Provider Agreement ("Agreement") with [Express Scripts] on October 10, 2017. Since that time, given [Express

> Scripts's] market power … the Agreement has literally or effectively been unilaterally amended from time to time by [Express Scripts] … For example, [Express Scripts'] [January 1,] 2023 contract amendment … As a result of these and similar equations in other contract amendments, [Express Scripts] has arbitrarily and capriciously reduced [the Foundation's] reimbursement rates every year (except 2023) without proper explanation ….

(*Id.* ¶¶ 29–32). That is the same, continuing conduct that the Foundation challenged in its prior case. As the court in the prior case recounted:

> According to [the Foundation], because of Express Scripts' considerable bargaining leverage as one of the nation's largest [pharmacy benefits managers], Express Scripts was able to impose [unfair contract terms], with no competitive check even though there was no legitimate business reason to do so. [The Foundation] alleges that [pharmacy benefits managers] like Express Scripts profit significantly from these [contract provisions], while pharmacies like [the Foundation] suffer from lower pharmacy reimbursement rates."

*AIDS Healthcare Found.*, 658 F. Supp. 3d at 700. Because the Foundation is challenging the same conduct, there is no new claim here for claim preclusion purposes. *See Suppes v. Curators of Univ. of Missouri*, 613 S.W.3d 836, 851–52 (Mo. App. 2020) (holding that allegations of later instances of continuing conduct were merely evidentiary details relating to the continuing conduct that did not constitute new ultimate facts for claim preclusion purposes.).

***Finally,*** the Foundation argues that the inclusion of Accredo as a defendant defeats claim preclusion because Accredo was not a defendant in the first case. (Doc. 41 at 15–16). This argument fails.

In determining if an action constitutes improper claim splitting, the primary inquiry is whether the claim arises out of the same "act, contract or transaction" as the previously litigated claims, *Kesterson*, 242 S.W.3d at 716, but "[a] court should also consider 'whether the parties … are the same in both actions.'" *Id.* (quoting *Grue v. Hensley*, 210 S.W.2d 7, 10 (Mo. 1948)). However, a party in the present action need not have been a party to the prior action, so long as the party was in privity with one of the parties to the prior action. *Stine v. Warford*, 18 S.W.3d 601, 605 (Mo. App. 2000). "Privity, as a basis for satisfying the 'same party requirement' … is premised

on the proposition that the interest of the party and non-party are so closely intertwined that the non-party can fairly be considered to have had [its] day in court." *Id.*

Here, Accredo's presence in this case does not allow the Foundation to evade the preclusive effect of Missouri's prohibition on claim splitting because Accredo is in privity with Express Scripts. Accredo is a wholly owned subsidiary of Express Scripts (Doc. 29 ¶ 10), making it "closely held" by Express Scripts. *See Missouri Mexican Prods., Inc. v. Dunafon*, 873 S.W.2d 282, 286 (Mo. App. 1994) (*quoting Restatement (Second) of Judgments* § 59 (Am. L. Inst. 1982)).[5] Thus, "it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both." *Missouri Mexican Prods.*, 873 S.W.2d 282, 286 (Mo. App. 1994) (quoting *Restatement (Second) of Judgments* § 59, cmt. e (Am. L. Inst. 1982)). Therefore, Accredo is in privity with its sole owner, Express Scripts, such that claim preclusion can apply here even though Accredo, its wholly owned subsidiary, was not named as a defendant in the prior action.

**C. These claims are also precluded because they could have reasonably been asserted in the Prior Action (and in some instances were).**

The Foundation's claims are also barred because they could have reasonably been brought in the prior action. In Missouri, claim preclusion "precludes a litigant from bringing, in a subsequent lawsuit, claims that ***should*** have been brought in the first suit." *Kesterson*, 242 S.W.3d at 715 (emphasis added); *see also Evanston*, 129 F.4th at 497 (same). "As such, the doctrine applies to every point properly belonging to the subject matter of litigations and which the parties, exercising reasonable diligence, might have brought forward at the time." *Kesterson*, 242 S.W.3d at 715–16 (quotation and citation omitted).

Start with the antitrust and state law claims. These claims are premised on the same alleged conduct that its prior case: As a large pharmacy benefits manager,

---

[5] "Missouri cases discussing claim preclusion generally follow the Restatement of Judgments." *Kesterson*, 242 S.W.3d at 717.

Express Scripts allegedly used its bargaining leverage to impose unfair terms in the 2017 Pharmacy Provider Agreement. *See supra*, § III.B.1. And the Foundation fails to show that these claims are based on new, or previously unknowable, ultimate facts. *See supra* § III.B.2. Thus, the Foundation could have asserted these alternative theories of liability in its prior action.

The same is true for the Foundation's contract claims. In the prior action, the Foundation brought contract claims for alleged breaches of the 2017 Pharmacy Agreement. *AIDS Healthcare Found.*, 658 F. Supp. 3d at 698, 701 ("[The Foundation] alleges that, as a result of its performance adjustments imposed between 2019 and 2022, Express Scripts under-reimbursed [The Foundation] by many millions of dollars."). Here, the Foundation again brings claims for alleged breaches of the 2017 Pharmacy Agreement. *See* (Doc. 29 ¶ 7, 29, 66) (claiming that "around January 2021, [Express Scripts] drastically cut its reimbursement payments to [the Foundation]"). Because these breaches are alleged to have occurred before 2023, these contract claims were "sustained and … capable of ascertainment" before the prior action was dismissed. *Kesler*, 516 S.W.3d at 893; *compare AIDS Healthcare Found.*, 658 F. Supp. 3d (dismissed in 2023) *with* (Doc. 29 ¶ 7) (alleging pre-2023 breaches). Thus, these claims are now precluded. *Kesler*, 516 S.W.3d at 893.

The Foundation's only excuse for not bringing these claims in the first case is that "it was unaware of the basis for" its contract claims until 2024. (Doc. 41 at 14). But the Foundation's own allegations negate this argument. According to the Foundation, "around January 2021, [Express Scripts] drastically cut its reimbursement payments to [the Foundation]." (Doc. 29 ¶ 66). As such, there was sufficient evidence "to place a reasonably prudent person on notice of [the] potentially actionable injury." *Kesler*, 516 S.W.3d at 893 (quotation and citation omitted); *see also Chesterfield Village*, 64 S.W.3d at 320 ("An injured party … can assert a claim for damages even though the party may not know precisely the nature and extent of the injury.").

## IV. Conclusion

For all of the reasons above, the Foundation's claims are precluded under Missouri law. Accordingly, **IT IS HEREBY ORDERED** that Defendants Express Scripts Inc. and Accredo Health Group Inc.'s motion to dismiss, (Doc. 35), is **GRANTED**. Plaintiff AIDS Healthcare Groups First Amended Complaint, (Doc. 29), is **DISMISSED**. A separate Order of Dismissal accompanies this Memorandum and Order.

**SO ORDERED,**

This 25th day of August, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE